UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALECIA M. PEDREIRA, et al.                                                           PLAINTIFFS

v.                                                               CIVIL ACTION NO. 3:00CV-210-S

KENTUCKY BAPTIST HOMES FOR CHILDREN, INC., et al.               DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court for consideration of the following motions:

1. Motion to dismiss for lack of jurisdiction by Mark D. Birdwhistell, Secretary of the Cabinet for Health and Family Services, and Norman A. Arflack, Secretary of the Justice and Public Safety Cabinet (collectively, "the Commonwealth")(DN 275).

2. Motion to dismiss for lack of jurisdiction by Kentucky Baptist Homes for Children, Inc. ("KBHC")(DN 276).

3. Motion of the plaintiffs, Alecia M. Pedreira, et al., for leave to file a second amended complaint (DN 288).

4. Motion of the plaintiffs, Alecia M. Pedreira, et al., for hearing on pending motions (DN 289).

5. Motion of the defendant, Kentucky Baptist Homes for Children, Inc., to strike the motion for leave to file a second amended complaint (DN 294).

6. Motion of the plaintiffs, Alecia M. Pedreira, et al., for leave to file a sur-reply in support of their motion for leave to file a second amended complaint (DN 298).

The briefs of the parties articulately detail the issues and arguments for the court. Therefore, the motion of the plaintiffs for oral argument will be denied. The motion for leave to file a sur-reply will be granted. The motion of KBHC to strike the motion for leave to file a second amended complaint will be denied. KBHC urges quite reasonably that the court should strike the motion on the grounds of untimeliness, prejudice, and for various perceived procedural irregularities. However, in order to ensure that this opinion considers and addresses fulsomely the standing arguments, the court will sidestep these issues, with the exception of the futility argument, and

consider the proposed amendments herein.[1] For the reasons explained in greater detail later in this opinion, the motion of the plaintiffs for leave to file a second amended complaint will be denied as futile. *Long v. United States*, 2007 WL 2725973 (W.D.Ky. 2007), *citing, North American Specialty Insurance Co. v. Myers*, 111 F.3d 1273, 1284 (6th Cir. 1997). The motions to dismiss the Establishment Clause claim for lack of standing will be granted, and the action will be dismissed with prejudice.

In April of 2003, the court denied the defendants' motion for judgment on the pleadings challenging whether the plaintiffs had standing as state and federal taxpayers to bring an Establishment Clause challenge to the receipt of state and federal money by KBHC for the care of youth placed in its care as wards of the state. The motion was grounded primarily in the contention that there was no factual basis for a finding of a "good-faith pocketbook injury" alleged by this purported unconstitutional conduct. The court ordered further briefing, and permitted the plaintiffs to file an amended complaint amplifying the factual allegations undergirding its claims. The court held that the plaintiffs had satisfied the *Doremus* [*v. Board of Education*, 342 U.S. 429, 434-435 (1952)] test for taxpayer standing on the facts alleged, and permitted the claims to go forward.

The court is now faced with a new round of motions to dismiss which address new contours added to the body of law addressing Establishment Clause claims raised by state and federal taxpayers.

In June of 2007, the United States Supreme Court handed down its opinion in *Hein v. Freedom from Religion Foundation, Inc.*, ___ U.S. ___, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) which reaffirmed its longstanding decision in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In so doing, the Court found *Flast* to have been incorrectly applied by the United States

---

[1] The court agrees with the defendants that the proposed amendments are more than mere "technical amendments" to the claims already stated in the amended complaint. We conclude, however, that even with the proposed amendments, the taxpayer plaintiffs do not have standing herein.

Court of Appeals for the Seventh Circuit, and "limit[ed] the expansion of federal taxpayer and citizen standing in the absence of specific statutory authorization to an outer boundary drawn by the *results* in *Flast*..." *Hein*, 127 S.Ct. at 2569 (emphasis in original), *quoting, United States v. Richardson*, 418 U.S. 166, 196, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). The Court noted that the *Hein* case fell outside the narrow exception that *Flast* created to the general rule against taxpayer standing, and reemphasized that "the *Flast* exception has a 'narrow application in our precedent,' [*DaimlerChrysler Corp. v.*] *Cuno*, 547 U.S. [332, at 348], 126 S.Ct. [1854], at 1865, [164 L.Ed.2d 589 (2006)] that only 'slightly lowered' the bar on taxpayer standing, *Richardson*, 418 U.S., at 173, 94 S.Ct. 2940, and that must be applied with 'rigor,'" *Valley Forge* [*Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464,] at 481, 102 S.Ct. 752[, 70 L.Ed.2d 700 (1982)].

*Hein*, 127 S.Ct. at 2568.

The defendants ask the court to find that a proper and rigorous application of the *Flast* test, as further refined by the *Hein* analysis, yields the conclusion that the taxpayers in this case lack standing to bring their Establishment Clause claim. We conclude that the defendants are correct, and that the proposed amendments offered by the plaintiffs in their tendered Second Amended Complaint would not alter this conclusion. Therefore the claim must be dismissed.

In order to meet the "case or controversy" requirement of Article III, the plaintiffs must demonstrate standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing is a necessary component of the court's subject matter jurisdiction. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996). Courts have the continuing obligation to examine their own subject matter jurisdiction. *Zurich Insurance Co. v. Logitrans Inc.,* 297 F.3d 528, 531 (6th Cir. 2002).

Background

The following facts, taken from our July 23, 2001 opinion, are restated herein for purposes of continuity only. The matters presently before the court have advanced well beyond the initial premises of the original complaint. Thus these facts are pertinent only insofar as they provide context for the reader.

On October 23, 1998, after approximately seven months of employment, Alicia Pedreira ("Pedreira") was terminated from her position as a Family Specialist at Spring Meadows Children's Home, a facility owned and operated by KBHC.

The decision to terminate her was made after a photograph taken of her together with her acknowledged "life partner" was displayed at the Kentucky State Fair, and her lesbian lifestyle became known to KBHC. The termination statement she received stated "Alicia Pedreira is being terminated on October 23, 1998, from Kentucky Baptist Homes for Children because her admitted homosexual lifestyle is contrary to Kentucky Baptist Homes for Children core values."

KBHC then issued a public statement with respect to the termination to the effect that "[i]t is important that we stay true to our Christian values. Homosexuality is a lifestyle that would prohibit employment."

KBHC has required that all its employees "exhibit values in their professional conduct and personal lifestyles that are consistent with the Christian mission and purpose of the institution." KBHC also adopted an employment policy which stated that

> [h]omosexuality is a lifestyle that would prohibit employment with Kentucky Baptist Homes for Children. The Board does not encourage or intend for staff to seek out people within the organization who may live an alternative lifestyle, we will however, act according to Board policy if a situation is brought to our attention.

Complaint, ¶¶ 25, 29, 34, 35.

Pedreira filed this action challenging her termination and the policies adopted by KBHC on the ground that its actions constitute religious discrimination.

A second plaintiff in this action, Karen Vance ("Vance"), a social worker living in California, alleged that she wished to relocate to Louisville to be closer to her aging parents. She claimed that there were employment positions open at KBHC for which she was qualified, but for which she had not applied because she is a lesbian. She asserted that her application for a position with KBHC would be futile in light of its formal and well-publicized policy prohibiting gays and lesbians from employment. Complaint, ¶¶ 41, 42, 43. Vance claimed that KBHC's hiring policy constitutes religion-based employment discrimination.

Seven individuals, identified in the complaint as Kentucky taxpayers, were also named plaintiffs in the action. They claimed that government funds provided to KBHC were used to finance staff positions which were filled according to religious tenets, and to provide services designed to instill Christian values and teachings in the children. These plaintiffs contended that state money was thus used for religious purposes, in violation of the United States Constitution.

The Commonwealth of Kentucky was sued on the ground that it violated the Establishment Clause of the First Amendment by providing government funds to KBHC. There is no dispute that KBHC has contracted with Kentucky and received government funds for the operation of its facilities. KBHC provides services to youth placed in its care as wards of the state.

For the reasons stated in the July 23, 2001 Memorandum Opinion, the court dismissed the claims of Pedreira and Vance alleging religious discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e-2(a)(1), and the Kentucky Civil Rights Act, KRS 344.010(1), and further dismissed a portion of the plaintiffs' Establishment Clause claim to the extent that such claim was grounded in the premise that KBHC's employment practices constituted religious discrimination. The constitutional challenge to KBHC's employee conduct requirement was rejected by the court. The court further noted that there was little in the way of evidence upon which to further

address the Establishment Clause claim at that time. The motion for summary judgment was denied on the issue, with leave to reinstate on a more complete record.

As already noted, the court permitted the plaintiffs to file an amended complaint to fulsomely detail their Establishment Clause claim. Having determined that the plaintiffs had overcome the practical difficulties in articulating a "good-faith pocketbook injury," the court found that the plaintiffs had alleged sufficient facts to establish taxpayer standing under *Doremus, supra.* and *Johnson v. Economic Development of City of Oakland*, 241 F.3d 501, 509 (6th Cir. 2001).

The Amended Complaint realleges much from the original complaint which has been dismissed. We need say nothing more in that regard.

The sum total of the allegations concerning the Establishment Clause claim is the contention that KBHC receives government funds through contracts with Kentucky agencies. These agencies are authorized to distribute state funds for care and treatment as deemed by the agency to be necessary for the well-being of any child committed to the care of the state. Such costs may include medical expenses, room and board, clothing, and other necessities. KRS § 200.115(1). *See,* Amend. Compl., ¶ 22. The Establishment Clause claim (Amend. Compl., ¶¶ 61-68) alleges that the Commonwealth of Kentucky's practice of providing government funds (1) to finance KBHC staff positions that are filled in accordance with religious tenets,[2] and (2) to finance KBHC services that seek to instill Christian values and teachings to the youth in its care constitute a violation of the Establishment Clause. Amend. Compl., ¶¶ 63, 64. The plaintiffs allege that "[t]he conduct of the Commonwealth of Kentucky described above has deprived and continues to deprive Plaintiffs of

---

[2] This factual premise has been rejected by earlier ruling of the court. As such, it may not be relied on as a basis for an Establishment Clause violation.

their rights, as taxpayers, that are protected by the First and Fourteenth Amendments..." Amend. Compl., ¶ 65.[3]

## State and Federal Taxpayers

As an initial matter, the plaintiffs urge that the principles enunciated in the Supreme Court decisions of *Flast* and *Hein, supra.,* are inapplicable to claims by state taxpayers. We find that *Cuno, supra.* and *Hinrichs v. Speaker of the House of Representatives of the Indiana General Assembly*, 2007 WL 3146453 (7th Cir. Oct. 30, 2007) mandate a contrary conclusion.

The Supreme Court stated in *Cuno* that

> The foregoing rationale for rejecting federal taxpayer standing applies with undiminished force to state taxpayers. We indicated as much in *Doremus v. Board of Education of Hawthorne*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). In that case, we noted our earlier holdings that "the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect" to support standing to challenge "their manner of expenditure." *id.*, at 433, 72 S.Ct. 394. We then "reiterate[d]" what we had said in rejecting a federal taxpayer challenge to a federal statute "as equally true when a state Act is assailed: 'The [taxpayer] must be able to show...that he has sustained...some direct injury...and not merely that he suffers in some indefinite way in common with people generally.'" *Id.*, at 433-434, 72 S.Ct. 394 (quoting *Frothingham, supra*, at 488, 43 S.Ct. 597); see *ASARCO, supra*, at 613-614, 109 S.Ct. 2037 (opinion of KENNEDY, J.)("[W]e have likened state taxpayers to federal taxpayers" for purposes of taxpayer standing (citing *Doremus, supra*, at 434, 72 S.Ct. 394)).

*Cuno*, 126 S.Ct. at 345.

The plaintiffs urge that *Cuno* is limited to taxpayer standing outside of the Establishment Clause context, and that the Sixth Circuit case of *Johnson, supra.,* establishes that *Flast* does not apply to the issue of state taxpayer standing.

The *Hinrichs* case supports the application of *Cuno* to state taxpayer Establishment Clause claims. In that case, the Seventh Circuit Court of Appeals held that the plaintiffs, state taxpayers seeking to challenge the Indiana "Minister of the Day" legislation, did not have standing to maintain

---

[3]The plaintiffs sought leave to file a second amended complaint in July of 2006 which was denied. The amendments proposed therein are not pertinent here.

their claim under the authority of *Flast* and *Hein*. *Hinrichs*, __ F.3d at *14-15. *See also, Doremus*, 72 S.Ct.. at 397.

We do not read anything in *Johnson* to suggest that the Sixth Circuit would decline to apply the holding in *Cuno* to state taxpayer Establishment Clause claims. The plaintiffs urge that since the Sixth Circuit did not apply *Flast* in the *Johnson* case, it established a less demanding standard for demonstrating state taxpayer standing. However, the issue before the court was whether the *Flast* nexus test applies to state taxpayer claims. Indeed, the *Flast* case is never mentioned in *Johnson*. Rather, the question addressed in *Johnson* was whether a loss of revenue constituted the requisite "financial interest" of a plaintiff to establish standing. *Id.* Thus it was the concept of "expenditure" which the court explored in *Johnson,* and stated that "the Supreme Court in *Doremus* did not distinguish between an expenditure and a loss of revenue in determining whether there was a 'good-faith pocketbook injury'" alleged. *Id.* The nexus test in *Flast* was not pertinent to the issue then before the court. Thus we do not find *Johnson* to be conclusive on this issue.

We conclude that *Flast* is the proper yardstick by which we must measure standing of both state and federal taxpayers to bring the Establishment Clause claim in this case.

Application

The Supreme Court began its decision in *Flast* by stating that *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) stood for forty-five years as "an impenetrable barrier to suits against Acts of Congress brought by individuals who can assert only the interest of federal taxpayers." The narrow inroad into this barrier to suit for taxpayers alleging that a federal statute violated the Establishment Clause was premised on the Supreme Court's understanding that the "injury" alleged in Establishment Clause challenges to federal spending are the very extraction and spending of tax money in aid of religion. *See, Cuno*, 126 S.Ct. at 1865, *quoting, Flast*, 88 S.Ct. at 1955-56.

The *Flast* case involved a claim by New York taxpayers that federal funds appropriated under the Elementary and Secondary Education Act were being used to finance instruction in religious schools, and to purchase materials for use in such schools. The court noted that "Appellants' constitutional attack focused on the statutory criteria which state and local authorities must meet to be eligible for federal grants under the Act." *Flast*, 88 S.Ct. at 1945. The Court explained that under the Act, any plan or program seeking funding was required to be "consistent with such basic criteria as the United States Commissioner of Education may establish." Any state participating in the program was subject to approval and supervision by the Commissioner, and the state was required to give assurances that a state plan would provide library resources, textbooks, and other instructional materials on an equitable basis for the use of children and teachers in private elementary and secondary schools in the state. *Id.*

In holding that the *Flast* plaintiffs had standing to bring their Establishment Clause claim, the court framed a two-part test in addressing the standing issue:

> The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. This requirement is consistent with the limitation imposed upon state-taxpayer standing in federal courts in *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.

*Flast*, 88 S.Ct. 1954.

The Court in *Flast* contrasted the facts before it with those in *Frothingham* where the taxpayer was found to lack standing. In *Frothingham*, the taxpayer challenged a particular federal

spending program, the Maternity Act of 1921. She had failed, however, to allege that Congress, in enacting the Act, had breached any specific limitation upon its taxing and spending power. *Flast*, 88 S.Ct. at 1955. Rather, she alleged that the enactment "invaded the legislative province reserved to the States by the Tenth Amendment." The Court explained that "[i]n essence, Mrs. Frothingham was attempting to assert the State's interest in their legislative prerogatives and not a federal taxpayer's interest in being free of taxing and spending in contravention of specific constitutional limitations imposed upon Congress' taxing and spending power." *Id.*

The Court found in *Flast* that, in the employment of the two-part nexus test, cases such as *Frothingham* where a taxpayer seeks to employ a federal court as a forum for the airing of generalized grievances about the conduct of government would be weeded out. *Flast*, 88 S.Ct. at 1956. A taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power." *Flast*, 88 S.Ct. at 1955.

What we find to be of preeminent importance in *Flast*, and which was emphasized by the court in *Hein, Cuno*, and *Hinrichs*, is that under the *Flast* two-part test the expenditures of which a taxpayer complains must be shown to have been made pursuant to legislative action. Absent such allegation, the purpose for which the *Flast* exception to the *Frothingham* prohibition was recognized would not be served. Taxpayers may not bring "generalized grievances" by simply asserting their status as payors and challenging the constitutionality of the spending of public funds. In the words of the Supreme Court in *Hein*, it is the "link between congressional action and constitutional violation" that supports taxpayer standing. *Hein*, 127 S.Ct. at 2566.

The Court in *Hein* explained that the challenged expenditures in *Flast* were funded by a specific congressional appropriation and were disbursed to private schools, including religiously affiliated schools, pursuant to a direct and unambiguous congressional mandate which directed that

funds be made available to private schools, the majority of which were, at that time, religiously affiliated. *Hein*, 127 S.Ct. at 2565. The Court in *Hein* underscored the importance of this "logical link between their taxpayer status and the type of legislative enactment attacked." *id.*

Similarly, the court discussed *Bowen v. Kendrick*, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) in which standing was found to mount an as-applied challenge to the Adolescent Family Life Act which authorized federal grants to private community service groups including religious organizations. A sufficient nexus was found even though the funds "had flowed through and been administered by an Executive Branch Official," because the claims called into question how the funds authorized by Congress were being disbursed pursuant to the Act's statutory mandate. The Court noted that *Kendrick* "involved a 'program of disbursement of funds pursuant to Congress' taxing and spending powers' that 'Congress had created,' 'authorized,' and 'mandated.'" *Hein*, 127 S.Ct. at 2567, *quoting, Kendrick*, 108 S.Ct. at 2580.

By contrast, the *Hein* taxpayers challenged expenditures made under the auspices of the President's Office of Faith-Based and Community Initiatives program created by executive order. Congress did not appropriate money for activities promoted by the program. Rather activities were funded from general Executive Branch appropriations through various agencies such as the Department of Education and the Department of Housing and Urban Development which had Executive Department Centers formed within the agencies pursuant to the President's order. In finding that *Flast* had been improperly applied by the lower court, the Supreme Court held that the *Hein* taxpayers lacked standing because the expenditures at issue were not made pursuant to any Act of Congress. The Court held that the general appropriations to the Executive Branch "did not expressly authorize, direct, or even mention the expenditures of which [the taxpayers] complain," and thus no link between congressional action and constitutional violation had been shown. *Hein*, 127 S.Ct. at 2566.

We find that the claim of the taxpayers in this case is comparable to that in *Hein* rather than *Bowen* or *Flast*. At best, the Amended Complaint alleges that KBHC receives funds through contracts with various Kentucky agencies. Thus it is alleged that the funds are provided through executive branch allocation rather than through legislative action. The Amended Complaint does allege that Kentucky Agencies charged with the care of children are authorized to make necessary expenditures for their care. However, the Amended Complaint fails to allege any particular appropriation, and thus obviously also fails to allege any legislative action through such appropriation which exceeded the taxing and spending powers of the legislature. Thus no nexus has been shown between any legislation, state or federal, and the alleged constitutional violation. The sole focus of the Amended Complaint is the contracts between KBHC and the Kentucky agencies.[4]

The plaintiffs seek leave to amend the complaint again to add references to state and federal funding provisions which are the purported sources of the funds which make their way into the coffers of the state agencies and ultimately into the hands of KBHC. These additional allegations do not save the claim, however. They are funding provisions which authorize spending for the care of children committed to the state's care. They cite provisions of the Social Security Act's Title IV-E program as well as Kentucky statutory provisions which authorize the Kentucky agencies to pay for the necessary care and treatment of wards of the state. These general funding provisions are alleged to be the ultimate source of funds, but there are no allegations that these congressional actions bear any connection to the alleged constitutional violation. Indeed, they are wholly non-directive, general funding provisions.

The plaintiffs take a stab at articulating a nexus between the appropriations and the constitutionally challenged conduct by stating that the cited legislation does not contain any

---

[4] Further, we note that the defendants state that these contracts do not, as might be presumed, award money with specific restrictions or conditions on use of the funds. Rather, the contracts entitle KBHC to seek reimbursement of funds expended where the costs have not otherwise been covered and where the expenditures are shown to have been made for permissible childcare expenses. The purported operation of these contracts while interesting, is not dispositive of the issue before us.

safeguards to prevent unconstitutional uses of funds. The plaintiffs have cited no caselaw to support the proposition that a failure to include oversight provisions is the equivalent of a congressional mandate in the context of a constitutional challenge to congressional action.

As noted in *Hein*, "Because almost all Executive Branch activity is ultimately funded by some congressional appropriation, extending the *Flast* exception to purely executive expenditures would effectively subject every federal action...to Establishment Clause challenge by any taxpayer in federal court...Such a broad reading would ignore the first prong of *Flast*'s standing test which requires a 'logical link between [taxpayer] status and the type of legislative enactment attacked.'" *Hein*, 127 S.Ct. at 2569. We conclude that the Amended Complaint, even embellished with the proposed recitation of funding sources, fails to demonstrate taxpayer standing to bring the Establishment Clause challenge herein.

For the reasons stated herein the motions of the defendants to dismiss the Establishment Clause claim for lack of standing will be granted and the action will be dismissed with prejudice. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**