UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALICIA M. PEDREIRA, *et al.*                                                                PLAINTIFFS

v.                                                                      CIVIL ACTION NO. 3:00-CV-00210

SUNRISE CHILDREN'S SERVICES f/k/a
KENTUCKY BAPTIST HOMES
FOR CHILDREN, INC., *et al.*                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court pursuant to Defendants' objection (DN 263) to an order of the Magistrate Judge entered July 18, 2007.

### I.

This case, as the parties are well aware, has had a lengthy history. Thus, the court will provide only a brief factual and procedural summary as it relates to the instant matter.

The plaintiffs, Alicia M. Pedreira, *et al.* ("Plaintiffs"), have brought Establishment Clause claims against Sunrise Children's Services f/k/a Kentucky Baptist Homes for Children, Inc. ("KBHC"), as well as two individuals in their official positions with the Commonwealth of Kentucky: Janie Miller, the Secretary of the Cabinet for Health and Family Services, and J. Michael Brown, the Secretary for the Justice and Public Safety Cabinet. Plaintiffs allege in their second amended complaint (DN 439) that KBHC takes care of youths who are wards of the Commonwealth and who have been placed at KBHC by state or county social workers. They further allege that most of KBHC's funds come from contracts with the Commonwealth of Kentucky. According to Plaintiffs' complaint, KBHC uses the government funds to finance staff

positions that are filled in accordance with religious tenets, and it seeks to instill Christian values and teachings to the youth in its care. Plaintiffs contend that those practices violate the Establishment Clause of the First Amendment.

On January 5, 2007, Plaintiffs moved for an extension of time for discovery, stating that a number of "serious disputes about the scope of discovery" needed to be resolved before discovery could continue. Of particular relevance here, the plaintiffs identified the following two issues as necessitating resolution by the court: (1) "[w]hether Defendant KBHC must disclose contact information for its former employees and whether Plaintiffs are free to contact such individuals without Defendant KBHC's consent"; and (2) "[w]hether Defendants must provide information identifying prior residents of KBHC and their parents." Thereafter, Magistrate Judge James D. Moyer sought briefing regarding whether state law prohibited the disclosure by Defendants of otherwise discoverable information.

On July 18, 2007, after the parties had briefed the issue, the Magistrate Judge entered an order that, *inter alia*, resolved certain outstanding discovery issues, including the two issues noted above. The relevant portions of the Magistrate Judge's order are reproduced here:

> a. On or before July 27, 2007, defendants shall produce the names and last known addresses of all former KBHC residents who complained of religious intolerance or proselytization either formally or informally (e.g., during exit interviews or meetings with social workers or counselors) and who are currently over eighteen years of age. While the court did not find persuasive defendants' arguments regarding the impact of certain federal and state statutes, and state evidentiary privileges, on plaintiffs' requests for this information, the court did find persuasive the defendants' concerns regarding the potentially fragile emotional health of these potential witnesses. Accordingly, plaintiffs shall be appropriately mindful of these concerns when they attempt to interview any of the persons identified, and they shall also be mindful that many may also be uneducated or unsophisticated and, therefore, more apprehensive than most about dealing with *any* member of the legal profession, much less lawyers, paralegals, and investigators from large cities. The court will therefore require plaintiffs[] to

> submit for court approval their proposed initial contact letter and scripts for their initial telephonic or in-person contact *before* plaintiffs contact any of the persons identified by the defendants. Similarly, absent court approval of the notification, defendants shall not notify any former KBHC residents that they may be contacted by plaintiffs or their counsel.
>
> b. KBHC must also, on or before July 27, 2007, disclose to plaintiffs the previously requested names and last contact information regarding their former employees. Neither the defendants, nor their counsel have any right to be present at any interview of the identified employees, unless the employee specifically and clearly so requests. The court will permit KBHC to offer its assistance to any identified former employee, but it may not do so until it submits its proposed notification (telephonic script or notice letter) to the court and the notification is approved.

In addition, the Magistrate Judge ordered that Defendants submit all putatively confidential financial information that Plaintiffs had requested for *in camera* inspection, that plaintiff Vance not engage in any discovery at that time, and that the parties were to agree upon a protective order by July 27, 2007, after which Plaintiffs were required to provide to Defendants tax returns that Defendants had requested.

Defendants filed objections to the Magistrate Judge's order. Defendants stated that they objected to the order "in its entirety," but only addressed the two specific portions of the order block-quoted above, namely the requirements that KBHC disclose the names of certain former residents and of all former employees.

Shortly after filing objections to the Magistrate Judge's order, Defendants filed renewed motions to dismiss the Establishment Clause claims. Defendants had earlier moved to dismiss the claims on the basis that Plaintiffs lacked standing, but the court denied that motion. In Defendants' renewed motions to dismiss, they argued that a recent Supreme Court opinion, *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587 (2007), had narrowed taxpayer standing. This court granted those renewed motions to dismiss, which fully resolved all the claims in the

case. Therefore, the court never resolved Defendants' objections to the discovery order. However, the Sixth Circuit reversed the order dismissing the Establishment Clause claims. *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (2009). Thereafter, Defendants' objections to the Magistrate Judge's discovery order were restored to this court's active docket for resolution.

## II.

Rule 72(a) of the Federal Rules of Civil Procedure states that when a party objects to a Magistrate Judge's order in a nondispositive matter, the District Judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Here, Defendants argue that the Magistrate Judge's order was "clearly erroneous." Under that standard:

> [t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.

*Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-574 (1985)). In other words, "[a] finding is clearly erroneous when the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Id.*

The focal point of Defendants' arguments is that the Magistrate Judge's order will invade the privacy of the former residents of KBHC. In support of that argument, Defendants cite several state and federal statutes that, they argue, preclude them from disclosing the information

sought by Plaintiffs. Defendants also contend that Plaintiffs are able to obtain the sought-after information in less burdensome ways.

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense–including the . . . identity and location of persons who know of any discoverable matter." Moreover, Rule 26(b)(1) also allows for courts to order discovery of "any matter relevant to the subject matter involved in the action." The scope of discovery under Rule 26(b)(1) is "quite broad," and the test for relevance under that rule "is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

However, discovery under Rule 26(b)(1) is "subject to the limitations imposed by Rule 26(b)(2)(C). Under Rule 26(b)(2)(C), a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Rule 26(c) allows for courts to issue protective orders limiting discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In the words of the Third Circuit, "Rule 26(c) provides district courts with the power to formulate a

detailed solution that reflects the concerns of particular individual disputes." *Pearson v. Miller*, 211 F.3d 57, 73 (3rd Cir. 2000).

As an initial matter, the court finds that there is no federal privilege protecting disclosure by Defendants of the identities of certain former KBHC residents and all former employees. Defendants argue that state confidentiality statutes protect disclosure of the information that they were ordered to turn over to Plaintiffs. *See* (DN 263-2 at 10-13). However, Rule 501 of the Federal Rules of Evidence provides that "[t]he common law–as interpreted by United States courts in the light of reason and experience–governs a claim of privilege unless" the United States Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise.[1] Moreover, "federal courts have generally declined to grant requests for new privileges." *Seales v. Macomb County*, 226 F.R.D. 572, 577 (E.D.Mich. 2005) (quoting *Pearson*, 211 F.3d at 67). The court has reviewed the statutes cited by Defendants and has found no language in them indicating that they are creating an absolute evidentiary privilege. Indeed, Defendants "concede[] that many courts have held that state confidentiality statutes do not create a federal evidentiary privilege which absolutely protects such information from discovery in a federal action" (DN 263-2 at 14). In short, the court finds no basis to conclude that the information at issue was privileged due to state confidentiality statutes.[2]

---

[1] The exception to Rule 501's statement concerning the sources of federal privileges is that in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Fed. R. Evid. 501. Here, Plaintiff's claim is not premised on state law, but upon the First Amendment to the United States Constitution. Thus, the exception does not apply here.

[2] Defendants also cite several federal statutes that they state "arguably protect" the identities of the former KBHC residents. However, Defendants do not suggest that those federal statutes create an absolute privilege protecting the children's identities from discovery. Further, the court has reviewed the federal statutes cited by Defendants and finds that none of them preclude the discovery of the information that the Magistrate Judge ordered Defendants to provide to Plaintiffs.
continue...

Even though the confidentiality statutes identified by Defendants do not create absolute evidentiary privileges in this action, federal courts have realized that considerations of comity dictate that confidentiality statutes be allotted "*some* weight along with other factors in deciding which materials should be discoverable." *Seales v. Macomb County*, 226 F.R.D. at 577. In other words, the court must conduct a balancing test, weighing the Commonwealth's interest in the privacy of the former residents against Plaintiff's interest in discovery. *Id.*

It is obvious from the Magistrate Judge's order that he considered the appropriate factors. Indeed, the Magistrate Judge explicitly stated that he "f[ou]nd persuasive the defendants' concerns regarding the potentially fragile emotional health" of the former KBHC residents.

Having recognized that the Magistrate Judge took account of the appropriate factors in the balancing test, the court turns to the question of whether the Magistrate Judge's ultimate conclusion as to the outcome of the balancing test was clearly erroneous. But for one tweak to the Magistrate Judge's order, the court is not left with the "definite and firm conviction" that the Magistrate Judge's resolution of the balancing test was erroneous. For reasons that will be explained below, the change the court will make to the Magistrate Judge's order is to further limit which of the former KBHC residents Defendants will be required to identify to include only those former residents who complained of religious proselytization, not those who complained solely of religious "intolerance."

---

[2]...continue
Specifically, Defendants point to provisions of the Health Insurance Portability and Accountability Act ("HIPAA"), the Family Educational Rights and Privacy Act ("FERPA"), the Individuals with Disabilities Education Act ("IDEA"), and the Social Security Act ("SSA"), as being "relevant to the privacy issues at bar." But, while each of those Acts contains provisions relating to the confidentiality of certain information, the Magistrate Judge's order did not require disclosure of any information deemed confidential by those Acts.

- 7 -

In considering the propriety of the Magistrate Judge's weighing of the factors, the court initially notes that the identities of former residents and employees are relevant, within the meaning of Rule 26(b)(1), to the Establishment Clause claims brought by Plaintiffs. The former residents of KBHC that complained of religious proselytization would have relevant knowledge of whether and to what extent KBHC sought to instill Christian values and teachings to the youth. And, former employees of KBHC are persons who would be expected to have information about KBHC's practices and policies at the time of their employment by KBHC, including the extent to which those practices and policies were drawn from or related to religion. Regarding the disclosure of witnesses with relevant knowledge, a leading treatise on federal practice has stated, "The court always has discretion under what is now Rule 26(c) to limit discovery if there is a good reason to do so. But the occasions in which there is reason to bar discovery of the names and addresses of witnesses are few indeed and ordinarily this kind of discovery should be regarded as a matter of right." 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2013 (3d ed. 2010).

Defendants argue that the Magistrate Judge's order requiring Defendants to turn over the names and addresses of former residents did not give enough credence to the privacy interests of those residents, and that the discovery order will "jeopardize[] the necessary bonds of trust that must be established between any child care provider and its current, former, and future residents." But, generally speaking, the Magistrate Judge's order to disclose the names and last known addresses of former KBHC residents is tailored to address the concerns raised by Defendants.

The Magistrate Judge's order placed two limits on which of the former KBHC residents Defendants would have to identify. First, the Magistrate Judge limited discovery only to those residents who are currently over eighteen years of age. Second, the Magistrate Judge required Defendants to identify only those residents who had complained of religious intolerance or proselytization. Thus, the Magistrate Judge attempted to limit any potential invasions of the privacy of former residents to those residents who were both very likely to have relevant information for Plaintiffs *and* who were no longer minors.

That said, the court finds it appropriate, in light of the concerns voiced by Defendants, to circumscribe as tightly as possible the class of former KBHC residents Defendants will be required to identify. Plaintiffs' allegations in this case are focused on KBHC's supposed indoctrination of the children in its care into Christianity, as well as the fulfillment of staff positions in accordance with religious tenets (*see* Second Am. Compl. ¶¶ 52-53). The allegations do not claim that KBHC was intolerant toward other religions, only that KBHC sought to instill Christian values and teachings to the youth in its care. Thus, while complaints of religious proselytization are very relevant to Plaintiff's claims, complaints of intolerance directed at non-Christians are more attenuated from Plaintiff's allegations. Therefore, the court sees fit to further limit the class of former KBHC residents whose names and last known addresses Defendants must disclose to only those who have complained about religious proselytization, and not those who have complained solely of religious intolerance.

Having thus limited the class of former residents that Defendants will be required to disclose to only those who will have the most relevant information to Plaintiff's claims and who are over the age of eighteen, the court next notes that the Magistrate Judge's order also sought to

protect the privacy of the former residents by requiring Plaintiffs to submit for court approval their proposed initial contact letter and scripts for initial telephonic and in-person contact. Thus, the Magistrate Judge would be able to retain control over what topics Plaintiffs' attorneys would initially speak to those former residents about and thus ensure that the initial conversation focused only on issues relevant to the allegations of religious indoctrination without any prodding into other areas of the former residents' backgrounds. That the Magistrate Judge's order provided the opportunity for him to control Plaintiffs' initial conversations with the now-adult former residents further shows that he carefully weighed the concerns of Defendants in crafting the order. Similarly, it must be noted that the only information that Defendants are required to disclose is the name and last known address of the former residents, not any information concerning their health or background, and that the disclosure is being made only to Plaintiff's lawyers, not the general public. In short, besides disallowing Plaintiffs to contact former residents who complained of religious intolerance, the court sees no basis for finding any other part of the Magistrate Judge's order requiring Defendants to disclose the names and last known addresses of certain former KBHC residents to be clearly erroneous.

The court also sees no basis for finding that the portion of the Magistrate Judge's order requiring Defendants to disclose the name and last known addresses of former KBHC employees is clearly erroneous. Defendant's objection to this portion of the Magistrate Judge's order is premised on Defendants' belief that Plaintiffs will use their questioning of the former employees as a "backdoor strategy to obtaining the contact information that was denied through the Order." Defendants also note that the former employees were privy to confidential information concerning the residents of KBHC that, Defendants speculate, the former employees may share

with Plaintiffs' lawyers. However, contrary to Defendants arguments, there is no indication that Plaintiffs have any intention of asking the former employees for contact information of residents or for information concerning aspects of the residents' stay at KBHC other than that which would be relevant to the claims of religious proselytization. First, the court notes that there is an entirely proper reason for Plaintiffs to contact the former KBHC employees: they are reasonably likely to have personal knowledge of information relevant to Plaintiffs First Amendment claims, specifically regarding KBHC's general practices and procedures. Moreover, there is little need for Plaintiffs to attempt to gain information concerning KBHC residents since Defendants are also required to disclose to Plaintiffs the names and last known addresses of former residents who have complained about religious proselytization. Finally, Plaintiffs have represented to this court (DN 274 at 15) that they are willing to agree to a restriction that they will not ask former employees the identities of any current or former residents without express approval of the Magistrate Judge.

This court is also not moved by Defendants argument that they should be allowed to be present when Plaintiffs interview former KBHC employees. Defendants cite no law for the proposition that they are entitled to be present at those interviews. Thus, Defendants have not shown that the Magistrate Judge's order allowing the interviews without Defendants' presence was clear error.

Further, the court rejects Defendants' argument that the Magistrate Judge was wrong to order Defendants to turn over the names and last known addresses of former KBHC employees and certain former residents because Plaintiffs have other means of obtaining relevant information concerning their claims. Defendants' suggestions of other means for Plaintiffs to use

to obtain information about their claims are less than convincing, and do not leave this court with the "definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong.*, 774 F.2d at 140.

For instance, Defendants state that Plaintiffs have access through the media to any current or former KBHC resident and any former employee that wishes to come forward. Defendants point out that a user-posted comment on a forum located on the website of the Louisville Courier Journal provided the contact information for Plaintiffs' lawyers. But, relying on the chance that a potential witness will run across that user-posted comment in a website forum is hardly an adequate substitute for the disclosure of the identities of witnesses who will clearly have knowledge relevant to the case.

Defendants also argue that disclosure of the identities of former KBHC residents and employees is unnecessary because Plaintiffs have already been permitted to interview current employees. Defendants state that these employees have a better knowledge of KBHC than residents or former employees, and further argue that former employees may be less credible because they may harbor a grudge against KBHC. But, as Plaintiffs point out, there is reason to believe that current KBHC employees may be less than credible when discussing their current employer, and the court sees no reason to limit Plaintiffs to talking only to the group of persons that Defendants deem the most credible.

In short, the Magistrate Judge considered the appropriate factors and entered an order that was generally tailored to address the concerns of Defendants and the needs of Plaintiffs. While this court believes it is appropriate to modify the Magistrate Judge's order to further limit which former KBHC residents Defendants will be required to disclose to include only those

former residents who complained of religious proselytization, and not those who complained solely of religious intolerance, there is no clear error in any other portion of the Magistrate Judge's order.[3]

### III.

For all the reasons stated above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Magistrate Judge's order entered July 18, 2007 will be **MODIFIED as follows: the words "intolerance or" on page 2, paragraph "a." of the order will be STRICKEN**. In all other respects, the Magistrate Judge's order will be **AFFIRMED**.

**IT IS SO ORDERED.**

August 30, 2012

Charles R. Simpson III, Judge
United States District Court

D03

---

[3] Although Defendants state that they object to the Magistrate Judge's order in its entirety, they raise no arguments concerning any portions of the order other than the the requirements that they provide to Plaintiffs the names and last known addresses of certain former residents and all former employees of KBHC. Having resolved those arguments, the court also perceives no clear error as to any other portion of the Magistrate Judge's order.