UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALICIA M. PEDREIRA, et al.                                                    PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:00CV-210-S

SUNRISE CHILDREN'S SERVICES, INC.,
f/k/a KENTUCKY BAPTIST HOMES FOR
CHILDREN, INC., et al.                                                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court for consideration of the following motions:

(1) Motion of defendant Sunrise Children's Services, Inc., to dismiss for lack of subject matter jurisdiction (DN 513).

(2) Motion of the plaintiffs, Alicia M. Pedreira, *et al.*, to voluntarily dismiss with prejudice (DN 512).

In March of 2013, the United States Magistrate Judge entered an order staying all proceedings in this case until a settlement agreement which had been reached between a number of parties was finalized. In May 2013, this court issued a Memorandum Opinion and Order addressing objections of defendant Sunrise Children's Services, Inc. ("Sunrise") to the magistrate judge's stay order. This court affirmed the magistrate judge's order. (DN 505). The settlement between the plaintiffs and the Commonwealth Defendants[1] has not yet been finalized, as Sunrise has sought, through additional motion practice, to prevent it.

---

[1]These defendants are identified later in the opinion.

The Plaintiffs' Motion to Voluntarily Dismiss the Action with Prejudice

The Settlement Agreement (DN 512-2) to which Sunrise objects was reached between the plaintiffs[2] and the so-called "Commonwealth defendants."[3,4] Sunrise is not a party to the agreement. The plaintiffs provided the gist of the Settlement Agreement in their motion to voluntarily dismiss the Second Amended Complaint:

> Generally, the Settlement Agreement provides for the Commonwealth Defendants to make certain modifications to their procedures for providing care to children through private child-caring facilities and child-placing agencies, such as Sunrise. The Settlement Agreement also provides for the Commonwealth Defendants to make certain modifications to their standard agreements with such private child-caring facilities and child-placing agencies, referred to as the "PCC Agreements." The PCC Agreements are two-year agreements that the Commonwealth Defendants enter into with service providers such as Sunrise each year. The Settlement Agreement states that the Commonwealth Defendants will include the agreed-upon modifications in the PCC Agreements that they enter into with providers starting in...July 2014.

DN 512, pp. 2-3.

We briefly recap what we stated in the May, 2013 Memorandum Opinion and Order regarding the history of the action.

This action began with the filing of the initial complaint against Sunrise and the Commonwealth of Kentucky in April, 2000 alleging discrimination in employment on the basis of religion and violation of the Establishment Clause. The long and winding road that has been

---

[2] Alicia M. Pedreira, Paul Simmons, Johanna W.H. Van Wijk-Bos, and Elwood Sturtevant.

[3] Audrey Tayse Haynes, Secretary, Cabinet for Health and Family Services, and J. Michael Brown, Secretary, Justice and Public Safety Cabinet.

[4] The Settlement Agreement lists Americans United for Separation of Church and State ("Americans United") and the American Civil Liberties Union and the American Civil Liberties Union of Kentucky (collectively "ACLU") as "Parties." The Agreement makes clear that Americans United and the ACLU are *not* parties to the lawsuit, but are parties to the Settlement Agreement. Americans United and the ACLU are referred to collectively in the Agreement as "Plaintiffs' Organizational Counsel." The Agreement recites that the plaintiffs, Alicia M. Pedreira, Paul Simmons, Johanna W.H. Van Wijk-Bos, and Elwood Sturtevant, have claimed that the Commonwealth defendants violated the Establishment Clause of the First Amendment to the United States Constitution through their agreements with Sunrise.

traveled to this point in the litigation is immaterial to this opinion. We need only note that, with the 2009 affirmance of the dismissal of the employment claims by the United States Court of Appeals for the Sixth Circuit, no claims remain against Sunrise. After remand of the Establishment Clause claim to the district court in 2011, the parties began to actively negotiate a settlement of the case.

A Second Amended Complaint was filed, consistent with the ruling of the Court of Appeals. (DN 439). The plaintiffs could not bring an Establishment Clause claim directly against Sunrise, as such a claim must target state action. The Second Amended Complaint evidences that Sunrise's presence in the action was grounded in Rule 19 of the Federal Rules of Civil Procedure (DN 439, ¶ 56), as Sunrise was joined in the remaining Establishment Clause claim for purposes of affording complete relief among the existing parties. The relief sought in the Second Amended Complaint was limited to:

(1) a declaration that the Commonwealth of Kentucky has violated the Establishment Clause of the First Amendment of the United States Constitution by funding Sunrise, a purported pervasively religious entity;

(2) an order enjoining the Commonwealth of Kentucky from providing further funding to Sunrise for services so long as they seek to instill Christian values and teachings in youth in Sunrise's care; and

(3) an award of costs and attorney's fees.

Sunrise has, in many respects, sought to pull the oar in this litigation, as the issues raised in the case potentially impact Sunrise's contracts with the Commonwealth and challenge the incorporation of Sunrise's moral and religious principles in its business practices. Sunrise filed a

motion for summary judgment addressing the merits of the Establishment Clause claim seeking to refute the allegations against it. (DN 480). The Commonwealth joined in the motion.

On March 19, 2013, before the motion was fully briefed, the plaintiffs and the Commonwealth defendants agreed to settle the claim between them. (*See* DN 502-2). The Agreement requires the Commonwealth to make certain modifications to their procedures and to the PCC contracts with private child-caring facilities and child-placing agencies on a going-forward basis.

Importantly, the Agreement *does not* indicate that there were any Establishment Clause violations by the Commonwealth or Sunrise. In fact, Section 12, entitled <u>No admission of liability,</u> states, in part:

> The execution of this Agreement affects the settlement of claims which are contested and denied and to which a bona fide dispute exists. The execution of this Agreement shall not be construed as an admission of any liability of any kind by any Party. By entering into this Settlement Agreement, the Commonwealth Defendants expressly deny that they have violated the United States Constitution or the Kentucky Constitution by contracting with Sunrise, and expressly deny that Sunrise is a "pervasively sectarian" organization, or that any alleged acts or omissions by Sunrise have violated the religious rights or freedoms of the children placed in Sunrise's care. The Commonwealth Defendants represent that they are entering into this Settlement Agreement for the sole purpose of resolving the Lawsuit...

DN 512-1, p. 14.

The Agreement provides for the dismissal of the entire action with prejudice, when the settlement is finalized. The Agreement settles the claim asserted in the Second Amended Complaint.. There are no claims asserted against Sunrise, nor has Sunrise itself asserted any claims in this action.

The Agreement imposes obligations on the Commonwealth relating to religious affiliation or religious objections of children entrusted to the Commonwealth for placement. As summarized by the Commonwealth,

> [T]he Settlement Agreement reached between the Plaintiffs and the Commonwealth requires a few basic things: (1) the Commonwealth is going to consider a child's religious affiliation and any religious objections when making placement decisions; (2) the Commonwealth has amended its standard PCC Agreement with *all providers* to further flesh-out the already existing requirements that child-caring and child-placing agencies respect each child's religious affiliation (if any), reasonably accommodate those religious affiliations (if any), and not discriminate against any child based on his or her religious affiliations (if any); (3) the Commonwealth and each agency will provide information regarding the child's rights with respect to religion to the children and parents (through posters and pamphlets), and employees will be trained about religious rights; (4) children will be questioned about their religious experiences during placement (through case worker interviews and through exit interviews); and (5) certain of these materials will be provided to the Plaintiffs over a seven year period to monitor the Commonwealth's compliance.

DN 521, pp. 3-4 (emphasis in original). The Agreement delineates the Commonwealth's commitment to provide information to children and their families about their religious freedoms and to gather information from them about religious preferences, if any, of the children in the Commonwealth's care. The Agreement also details steps to be taken by the Commonwealth to ensure that expressions of religious preference are respected and that compliance by all contracting child-caring facilities and child-placing agencies is monitored by the Commonwealth defendants.

In conjunction with this agreement, the plaintiffs have moved for entry of an order (1) voluntarily dismissing the action with prejudice, (2) incorporating the Settlement Agreement into the order, and (3) retaining jurisdiction by the court to enforce the order.

As noted in *Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir. 1964), "Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no

higher than this. [citations omitted]." *See also D & M Millwork, Inc. v. Elite Trimworks Corporation, Inc.*, No. 2:08-0101, 2010 WL 547154, *3 (M.D.Tenn. Feb. 10, 2010)("The holding in *Smoot* has been consistently endorsed by the Sixth Circuit and applied by the district courts...In light of the unbroken string of cases cited above and the absence of a Sixth Circuit case that identifies clear circumstances under which the district court would have discretion to deny a Motion for Voluntary Dismissal with prejudice, the court concludes that *Compuserve*[5] does not substantively change the *Smoot* doctrine").

Although it earnestly desires to receive its "day in court," Sunrise has no ground to prevent the voluntary dismissal with prejudice of this action. The Establishment Clause claim, the only claim stated in the Second Amendment Complaint, was brought against the Commonwealth defendants, and Sunrise has asserted no claims here. Despite the fact that this Establishment Clause claim was premised upon certain factual allegations concerning Sunrise's actions while under contract with the Commonwealth, relief for the purported Establishment Clause violation was sought as against the Commonwealth defendants only. No such claim could be maintained against Sunrise. Thus Sunrise's suggestions that it is unduly burdened or unfairly impacted by the settlement are unavailing. In any event, we address a number of these contentions herein to illustrate that this settlement, negotiated at arms-length, is legal, not a product of collusion, nor contrary to the public interest.[6]

---

[5]Sunrise cites to *Compuserve v. Saperstein*, 1999 WL 16481 (6th Cir. Jan. 8, 1999), an unpublished decision, for the proposition that this court should find an exception to the *Smoot* doctrine and apply it in this instance. The court did not find a basis for an exception to the *Smoot* doctrine in the *Compuserve* case, nor did the court identify the contours of such a theoretical exception.

[6]This tripartite standard, set out in *Williams v.* Vukovich, 720 F.2d 909, 921 (6th Cir. 1983) *citing Stotts v. Memphis Fire Department,* 679 F.2d 541 (6th Cir. 1982), was applied to court review and approval of a consent decree. For the reasons stated herein (pp. 10-11), we conclude that the Settlement Agreement is not a consent decree nor is it "tantamount to a consent decree," as urged

(continued...)

Sunrise urges that the Agreement will subject it to a "Hobson's Choice" – That is, it will have to choose either to accept terms in new PCC agreements which it finds objectionable, or forego contracts with the Commonwealth which provide essential funding for its continued operation. As aptly stated by the Commonwealth defendants however, this is not a "Hobson's Choice;" it is a business choice. The Agreement itself cannot be found objectionable in this regard. The Agreement imposes no obligations on Sunrise whatsoever. Sunrise and all other child-caring and child-placing entities who choose to enter into PCC contracts with the Commonwealth in the future will be subject to various new terms in these contracts. These contracts may be accepted or not, at the discretion of each entity. Sunrise does not suggest that the Commonwealth does not have the right to add to or alter the terms of its future PCC contract offerings, with or without this settlement.[6]

Sunrise argues that the Agreement impermissibly singles it out for scrutiny by the plaintiffs' Organizational Counsel, as the Commonwealth defendants have agreed to annually disclose certain (redacted) religious preference documentation concerning children placed in Sunrise facilities. Sunrise expresses concern that this requirement will subject it to "public stigma" because "it would support an inference in the mind of a reasonable observer that Sunrise infringed upon the religious freedoms of children..." DN 514, p. 16.

In the very document which supposedly gives rise to this "inference," the Commonwealth defendants categorically deny "that any acts or omissions by Sunrise have violated the religious

---

[6](...continued)
by Sunrise, either as written, or incorporated into an order of dismissal with the retention of jurisdiction by this court. The law in the Sixth Circuit is clear, and permits the plaintiffs' voluntary dismissal of the action with prejudice. The court need not, therefore, address all of the many policy arguments and tangential legal attacks on this court's authority raised in opposition to the motion to voluntarily dismiss.

[6]Sunrise has urged that the Commonwealth must engage in notice and rulemaking prior to enacting these changes. The Commonwealth has identified regulations already in place which render additional administrative procedures unnecesary.

rights or freedoms of the children placed in Sunrise's care." DN 512-1, p. 14, Section 12. Thus the document seeks to dispel this purported "stigma" head on.[7]

Further, the monitoring provision of the Agreement (DN 512-1, Section 3, p. 9) specifically states that disclosure of this documentation is "to monitor *the Commonwealth Defendants'* compliance with the terms of this Settlement Agreement." (emphasis ours). That is, whether the Commonwealth defendants are advising, conferring, and documenting, as required by the Agreement. No additional documentation must be generated with respect to children placed in Sunrise facilities that is not also required to be maintained for all PCC-contracting facilities.

By operation of this Agreement, the plaintiffs seek to annually review documentation generated for Sunrise-placed children, the entity with whom the Commonwealth contracted, and from which contract the plaintiffs' Establishment Clause claim arose. The plaintiffs also seek review of documentation concerning *any other facility with whom a complaint is lodged* concerning religious choice. Thus, while clearly denying the claim against Sunrise, the Commonwealth defendants have agreed to permit the plaintiffs to monitor the Commonwealth defendants' compliance with the agreed procedures in its future dealings, if any, with any and all PCC-contracting entities, including Sunrise.

Sunrise may view this as splitting hairs. The court has, however, has simply recited what is stated in the Agreement. The Commonwealth defendants have agreed to permit their future dealings with Sunrise and any other PCC-contracting entity to be reviewed. It bears noting that it

---

[7]Sunrise takes great umbrage at the press generated after the settlement agreement was reached which touted a plaintiffs' victory against religious indoctrination. Sunrise quoted plaintiffs' counsel's press release which stated "The advocacy group presented extensive evidence that Sunrise Children's Services, a state contractor affiliated with the Kentucky Baptist Convention, coercively imposed Christianity upon children in its care in many ways." DN 502-4. The court expresses no opinion concerning the content of the press release.

is Sunrise who extrapolates from the actual terms of the Agreement the notion that it will be subjected to "seven years of constant scrutiny" (DN 514, p. 8) by Organizational Counsel which will "be applied solely to Sunrise." *Id.*[8]

Finally, Sunrise argues that its Due Process and Free Exercise rights will be violated by this Agreement. It urges that it will be denied PCC contract terms that it has enjoyed for many years without being afforded an opportunity to challenge the Commonwealth defendants' decision to implement changes to those terms. Sunrise is clearly not being denied the right to enter into PCC contracts. It has not claimed that the Commonwealth lacks the authority to make the changes to which it has agreed, nor has Sunrise identified any future entitlement to particular contract terms with the Commonwealth.

Sunrise further claims that it is being discriminated against on the basis of its Baptist affiliation by purportedly being singled out for scrutiny by the plaintiffs' Organizational Counsel. But it identifies no such discrimination. It asserts nothing more than the fact of its Baptist identity in support of its argument.

The plaintiffs have settled their claim against the Commonwealth defendants by obtaining an agreement from those defendants to change the way in which they conduct business with their clients and child service providers. This Agreement need not satisfy Sunrise, nor may Sunrise prevent its consummation in settlement of this litigation.

---

[8] Sunrise's arguments concerning a purported "competitive disadvantage" and a lack "of any sense of finality" for Sunrise are undeveloped. However, these arguments are irrelevant to this court's consideration of the motion for voluntary dismissal.

Moving beyond the Agreement itself, Sunrise contends that the entry of an order by this court incorporating the Settlement Agreement and retaining jurisdiction to enforce it renders the agreement "tantamount to a Consent Decree" requiring judicial approval and continual monitoring.[9]

The court finds the cases of *U.S. v. Lexington-Fayette Urban County Gov't.*, 591 F.3d 484 (6th Cir. 2010) and *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983), unhelpful in evaluating Sunrise's argument. *Lexington-Fayette*, involving a consent decree in a Clean Water Act civil enforcement action, and *Williams*, involving an employment discrimination class action, do not assist in characterizing the Agreement in this case. While *Williams* notes generally that "[a] consent decree is essentially a settlement agreement subject to continued judicial policing," *Williams*, 720 F.2d at 920, the court did not discuss what "continued judicial policing" entails.

In the case of *Christina A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003), addressing the distinction between settlement agreements and consent decrees in the context of prevailing party status, the court stated:

> The Supreme Court specified that a judgment on the merits or a "settlement agreement[ ] enforced through a consent decree" is sufficient to meet this standard. *Id*. at 604, 121 S.Ct. 1835. In the present case, the debate is over the status of the settlement agreement and the court's role in enforcing it The Court in *Buckhannon* stated that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." *Id.* at 604 n. 7, 121 S.Ct. 1835.

*Christina A*, 315 F.3d at 992 *(quoting Buckhannon Board & Care Home Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855(2001)). The court additionally stated that "consent decrees are distinguishable from private

---

[9]The document is not presented as a consent decree, and judicial approval of a consent decree has not been sought. The plaintiffs and Commonwealth defendants urge that the Agreement clearly evidences that it is not a consent decree, citing Section 9 which limits enforcement by the court to specific performance only. Sunrise does not argue to the contrary. Rather, it urges that the court should view it as "tantamount to a consent decree."

settlements by the means of enforcement," noting that consent decrees are enforceable through the supervising court's exercise of contempt powers. *Christina A.*, 315 F.3d at 993.

In *Buckhannon*, the Supreme Court noted that "Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into an order of dismissal. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)." *Buckhannon*, 121 S.Ct. 1840, n. 7.

In *Kokkonen*, the court discussed the effect of retaining or choosing not to retain jurisdiction over an ordinary settlement. The court noted that where jurisdiction is retained in a court order of dismissal, the parties need not resort to a separate suit in the event of a breach of the agreement. Nothing in *Kokkonen* suggests that the retention of jurisdiction over a settlement transforms it into a consent decree. Rather, the court noted that "If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so." *Kokkonen*, 511 U.S. at 381 (emphasis in original). With respect to the settlement before this court, the parties have clearly defined the court's role in any further issue arising from performance under the agreement. This court is divested of the enforcement powers normally available to a court under a consent decree.

In the Agreement before the court, the court is divested of any contempt power, as Section 9 states that "[t]he Commonwealth Defendants shall not be subjected to any civil contempt fines or criminal contempt sanctions for any violation of this Settlement Agreement." DN 512-2, p. 13, Sec. 9. Enforcement is limited to specific performance. *Id.* The Agreement also provides for a comprehensive informal resolution process before proceeding under Section 9. DN 512-2, Section

10, p. 13. The court finds that there is neither a factual nor legal basis for construing this Settlement Agreement to be tantamount to a consent decree.

Sunrise's Motion to Dismiss for Lack of Jurisdiction

Sunrise has filed a motion to dismiss the action for lack of subject matter jurisdiction. For the reasons stated below, the court finds Sunrise's motion to dismiss is without merit.

The United States Court of Appeals for the Sixth Circuit determined that the plaintiffs sufficiently articulated state taxpayer standing to pursue an Establishment Clause claim against the Commonwealth defendants. Accordingly, this court permitted the filing of the Second Amended Complaint. DNs 317; 439. The plaintiffs and Commonwealth defendants have reached a settlement of this claim whereby the plaintiffs agree to voluntarily dismiss the action with prejudice. Sunrise contends, however, that for a variety of reasons the plaintiffs no longer have standing and the action must be dismissed with prejudice. Thus we begin a journey toward dismissal with prejudice which, in any event, appears to be the result sought by all concerned.

Sunrise argues that the 2011 decision of *Arizona Christian School Tuition Organization v. Winn*, 131 S.Ct. 1436 (2011) abrogated *Pedreira*'s holding in which the Court of Appeals recognized state taxpayer standing for the plaintiffs. Sunrise urges that if the "correct nexus test," stated in *Winn,* were to be applied to the two Kentucky statutes cited in the Second Amended Complaint, the court would find that state taxpayer standing is now lacking.

Sunrise urges this court to adjudge anew the matter of standing, to find standing lacking, and to dismiss the action with prejudice, rather than permit a voluntary dismissal with prejudice of the Second Amended Complaint.

As the case is presently postured, the plaintiffs have state taxpayer standing. However, the plaintiffs do not seek to proceed to litigate this claim to judgment. Rather, they have agreed tp dismissal of their claim with prejudice.

Sunrise contends that

> [N]ow, for the first time, more than thirteen years after they commenced this action–[plaintiffs] are requesting new relief (by seeking an order from the Court incorporating the Bilateral Settlement Agreement ("BSA"))...that is *completely different* from the injunctive and declaratory relief Plaintiffs requested in their Second Amended Complaint. Entry of an order incorporating the BSA's terms would provide different, and entirely *non-financial* relief to Plaintiffs: unspecified reforms to Kentucky's administrative regulations, substantial modifications to PCC Agreements, enhanced compliance monitoring, and seven years of Sunrise-specific oversight by Plaintiffs or their counsel...The long and the short of the BSA is an effort to graft sharper enforcement teeth onto the pre-existing legal requirements that already protect children in the PCC System from religious coercion, discrimination and proselytization. E.g., KRS 199.640(5); 922 KAR 1:300(6)(7); 922 KAR 1:310(12)(1)(h). The BSA's "enforcement-plus" regime has many components,...but they all have one thing in common: they dictate how the Executive Branch administers the PCC System and *not* how the Legislative Branch funds the PCC System.

DN 513-1, pp. 2-3.

Sunrise suggests that the terms of the settlement agreement somehow alter the relief sought by the plaintiffs in the Second Amended Complaint, and that therefore standing is undermined (presumably because the settlement does not provide relief for the alleged financial injury of the state taxpayers). Thus Sunrise urges that the terms of the settlement transform the Establishment Clause claim into a Free Exercise claim on behalf of children. However, the relief agreed upon in settlement need not be identical to the relief sought in the complaint. Indeed, settlements most often do not yield plaintiffs all they seek in an action. In a weak case, a settlement may yield a plaintiff next to nothing. In a private settlement, a plaintiff may choose to settle for an apology or a token.

We have found that this settlement is not tantamount to a consent decree, and the judicial imprimatur required for judicially enforced decrees is neither sought nor required here. Sunrise has not offered any authority for the proposition that a plaintiff is limited to settling for the relief sought in the complaint. Nor has it cited authority establishing that the terms of a settlement can alter a party's standing to bring the underlying action.

In any event, even under the judicial approval framework for consent decrees, the court would find that the agreement "springs from and serves to resolve a dispute within the court's subject matter jurisdiction," comes "within the general scope of the case made by the pleadings," and operates to "further the objectives of the law upon which the complaint was based." *Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed. 405 (1986). The Second Amended Complaint alleges that the Commonwealth defendants provided government funds to pervasively religious entities without restrictions or safeguards against religious use of the funds, in violation of the Establishment Clause (DN 439, ¶ 55), identifying the contractual relationship with Sunrise as an alleged case in point. The Agreement clearly springs from the allegation, serves to resolve it, and in so doing furthers the objective of the claim on a going-forward basis by incorporating certain additional restrictions into the Commonwealth defendants' procedures. This is not impermissible.

In sum, based upon its argument that the plaintiffs lack Article III standing as state taxpayers, Sunrise seeks dismissal of the action *with prejudice* for lack of subject matter jurisdiction. DN 513-3. Voluntary dismissal of the action *with prejudice* is what the plaintiffs intend to provide.

Although Sunrise seeks the same result, its apparent motivation is to prevent the Commonwealth defendants from committing themselves, in the process of dismissing the action, to

the implementation of procedures and administrative oversights which it finds distasteful and unwarranted. With or without a settlement, Sunrise simply has no ability to control this outcome. It urges, for example, that "[b]ecause of the unique nature of taxpayer standing and the nexus test that narrowly circumscribes it, the sole remedy available to Plaintiffs is an injunction prohibiting the unlawful funding, if any, that causes their alleged financial injury. *Sherman v. Illinois*, 682 F.3d 643, 647 (7th Cir. 2012), *cert. denied*, 133 S.Ct. 985 (2013)." DN 525, p. 11. However, the plaintiffs are not seeking a judicial remedy. Instead, they are agreeing to terminate the lawsuit on terms which they find agreeable. Such negotiated terms need not constitute "available judicial remedies" in order to end the litigation.

## Conclusion

For the reasons set forth herein, the court will (1) enter the tendered order of the settling parties incorporating the settlement agreement into the order of dismissal and providing for this court's retention of jurisdiction to enforce the order, and (2) grant the motion of the plaintiffs to voluntarily dismiss the Second Amended Complaint with prejudice. A separate order will be entered herein this date in accordance with this opinion.

June 30, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**