UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


ALICIA M. PEDREIRA, et al.                                      PLAINTIFFS


v.                                                     3:00-CV-210-CRS


SUNRISE CHILDREN'S SERVICES, INC.,
f/k/a KENTUCKY BAPTIST HOMES FOR
CHILDREN, INC., et al.                                          DEFENDANTS


**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the court on motion of the plaintiffs, Alecia M. Pedreira, *et al.*, for

voluntary dismissal of the action with prejudice and incorporation of the Settlement Agreement,

as amended, into the court's order of dismissal as a consent decree.[1]

The long and storied history of this case was set out by the United States Court of

Appeals for the Sixth Circuit. [2]

> Sunrise[3] operates group homes, places children in foster care, and provides related
> services for the State of Kentucky, which provides 65% of Sunrise's revenue.
> Sunrise describes its mission as "to extend the grace and hope of our loving God
> to the young people in our care by meeting their physical, emotional and spiritual
> needs." Some of those young people have alleged that Sunrise pressured them to
> become practicing Christians.
>
> Fifteen years ago, Alicia Pedreira and some other Kentucky taxpayers filed this
> lawsuit, arguing, in part, that Kentucky's payments to Sunrise violated the

---

[1] DN 552, p. 1.
[2] This  history is taken virtually *verbatim* from *Pedreira v. Sunrise Children's Services, Inc. (Pedreira II),*  802 F.3d
865, 868-69 (6th Cir. 2015).
[3] Formerly Kentucky Baptist Homes for Children, Inc.

Establishment Clause. The plaintiffs named Sunrise as a necessary defendant under Federal Rule of Civil Procedure 19 for purposes of this claim.  Without Sunrise, the plaintiffs alleged, they could not obtain complete relief and Sunrise itself would be unable to protect its interests. Seven years later, Sunrise and Kentucky moved to dismiss the suit for lack of standing. The district court granted the motion, but on appeal [the United States Court of Appeals for the Sixth Circuit] reversed, holding that the plaintiffs have standing as Kentucky taxpayers. *See Pedreira v. Ky. Baptist Homes for Children (Pedreira I)*, 579 F.3d 722, 731-33 (6th Cir. 2009).

On remand, the plaintiffs filed an amended complaint, which again named Sunrise as a necessary defendant. In 2012, Sunrise and Kentucky moved for summary judgment. R. 480. The plaintiffs never responded to the merits of that motion. Instead, citing ongoing settlement negotiations, they moved to extend their deadline for responding to it. Over Sunrise's objection, the district court granted the motion.

A few months later, the plaintiffs and Kentucky—but not Sunrise—agreed to [a] settlement…which runs 15 pages single-spaced. Kentucky expressly denies in [that] agreement that it (or Sunrise) violated the Establishment Clause or otherwise violated the rights of children in Sunrise's care. But the settlement require[d] Kentucky to change some of the terms in its standard two-year contracts with Sunrise and other providers. The new terms require[d] providers to inform a child and the child's parents of a foster home's religious affiliation, to provide children with opportunities to go to the church of their choice, and to provide non-religious alternatives to religious activities. Providers must also agree not to discriminate against children on the basis of religion, coerce children to engage in religious activity, or attempt to convert children to a new religion. Further, when children leave their care, providers must give them an exit survey that asks, among other things, whether the provider tried to convert the child to a new religion.[4]

In return, the plaintiffs agree[d] to dismiss their lawsuit with prejudice and to waive any claims based on conduct occurring before the settlement. The plaintiffs retain the right to bring claims based on future conduct, but must submit to arbitration before doing so.

The settlement provide[d] that the Kentucky district court that entered the agreement shall have exclusive jurisdiction to enforce it. Although the ACLU and Americans United (neither of which is a party to this case) have the same rights as Kentucky and the plaintiffs to seek enforcement of the agreement, Sunrise (which

---

[4]The settlement also included monitoring provisions that singled out Sunrise, imposing reporting requirements which were to be applied differently from the reporting required of other contracting child care providers. This provision, paragraph 3(a) was eliminated by the Amendment.

is a party to the case) has no rights to do the same. The settlement also recite[d] that it [was] "Not [sic] Consent Decree," and purport[ed] to divest the district court of its power to hold Kentucky in contempt as a remedy for violations of the agreement (which, the parties contemplated, the district court would incorporate into its order dismissing the case). The settlement expires seven years after its effective date, subject to certain exceptions not relevant here.

After the plaintiffs and Kentucky reached agreement on the settlement, they asked the court to stay the case while they finalized some of the settlement's terms. Again over Sunrise's objection, the district court granted the motion. In September 2013—nearly a year after Sunrise moved for summary judgment—the plaintiffs and Kentucky filed a motion asking the court to dismiss the suit and retain jurisdiction to enforce the settlement. Sunrise objected and filed a motion to dismiss for lack of jurisdiction. The district court denied Sunrise's motion, granted the plaintiffs' motion to dismiss, entered an order incorporating the settlement, and retained jurisdiction to enforce that order. Another appeal followed.

After reviewing the agreement and this court's treatment of it, the matter was remanded for consideration of the settlement  as a consent decree rather than a private agreement, and for the court to address whether the consent decree[5] is fair, reasonable and consistent with the public interest.  The Court of Appeals mandated that the court consider whether the consent decree is fair to Sunrise Children's Services, Inc. ("Sunrise") in particular, and directed that the court afford anyone affected by the consent decree the opportunity to present evidence and have its objections heard.[6] The decision of the Court of Appeals was rendered on October 6, 2015. Rehearing en banc was denied November 12, 2015.

Shortly thereafter, on November 18, 2015, the parties to the original agreement entered into a First Amendment to Settlement Agreement (the "Amendment"), apparently for the purpose of attempting to cure an aspect of the Settlement Agreement which concerned the Court

---

[5] The Settlement Agreement was referred to as both the "Settlement Agreement" and "consent decree" in the Court of Appeals decision.  The terms "consent decree" and "Settlement Agreement" are used interchangeably herein as well.

[6] See Pedreira II at 872.

of Appeals, namely the way in which it "singles out Sunrise by name for special monitoring by the ACLU and Americans United," thereby denying Sunrise a chance to clear its name and imposing reputational harm on Sunrise with respect to alleged unconstitutional activities which have never been proven.

The Amendment makes a significant alteration to the agreement as originally written with respect to the treatment of Sunrise. Section 3 was deleted entirely and replaced with provisions which do not mention Sunrise,[7] and which purport to apply to "any Agency" rather than only Sunrise. This was the only change to the agreement made by the Amendment. Indeed, the Amendment recites that "The Parties desire to amend the Settlement Agreement to eliminate any 'singl[ing] out' of or potential reputational harm to Sunrise by uniformly applying the same monitoring triggers and rules to all Agencies, as set forth in this Amendment."[8] Thus the Amendment seeks to comport with dicta in *Pedreira II* at p. 872 that "A decree that did not, directly or indirectly, single out Sunrise in the matter would stand on different ground than the decree as it comes to us here." It therefore appears to this court that the original Settlement Agreement is no longer operative, as it has been superseded by operation of the Amendment.

Since the point of the remand was to consider the original agreement as a consent decree for, among other things, fairness to Sunrise in light of the special monitoring requirement applicable only to Sunrise, a provision now deleted by the Amendment, we deem it unnecessary

---

[7] Section 12 of the original Settlement Agreement remains as the only section to mention Sunrise: "Section 12. <u>No admission of liability</u>. The execution of this Agreement affects the settlement of claims which are contested and denied and to which a bona fide dispute exists. The execution of this agreement shall not be construed as an admission of any liability of any kind by any Party. By entering into this Settlement Agreement, the Commonwealth Defendants expressly deny that they have violated the United States or the Kentucky Constitution by contracting with Sunrise, and expressly deny that Sunrise is a 'pervasively sectarian' organization, or that any alleged acts or omissions by Sunrise have violated the religious rights or freedoms of the children placed in Sunrise's care…" DN 552-2, p. 14.
[8] DN 552-2, p. 1, Recitals.

to perform a fairness analysis of the Settlement Agreement in its original form.  While we must, of course, respect the mandate of the Court of Appeals, to do so would be to perform a futile act.

What is before us is the Settlement Agreement, as amended.  It has been brought before us via the plaintiffs' current motion.[9]

## I. Analysis

Presently unable to secure the cooperation of the Commonwealth defendants despite the terms of the Amendment requiring them to do so, the plaintiffs filed their own motion seeking voluntary dismissal with prejudice of the action and approval of the Settlement Agreement, as amended, as a consent decree.[10]  Sunrise and the Commonwealth defendants pose a number of arguments in opposition to the court's consideration of the amended agreement.[11]

### A.  Beyond the Mandate

Sunrise argues that this court cannot consider the Amendment, as it falls outside the mandate of the Sixth Circuit that we consider the consent decree presented to us on remand.  To consider the newly-minted consent decree, Sunrise urges, is to deviate from the letter and the spirit of the Court of Appeals decision.  For a number of reasons, we reject this argument.

---

[9] DN 552.

[10] DN 552-5.

[11] On April 11, 2016, General Counsel for the then newly-elected Governor Matthew G. Bevin sent a letter to the plaintiffs and their Organizational Counsel stating that a "fresh appraisal" of this case yielded the conclusion that neither the original nor the amended Settlement Agreement can or should be pursued on the present remand, and that neither document binds the Commonwealth in contracting with private child care providers. DN 552-3.  The four-page letter postulates nine legal arguments in support of the Commonwealth's current position  While this letter has been provided to the court as an attachment to the Plaintiffs' Motion for Voluntary Dismissal with Prejudice and Approval of Settlement Agreement as a Consent Decree (DN 552), it is not a pleading of record in this action nor is General Counsel representing the Commonwealth defendants in the case.  To the extent that the arguments asserted in the letter are not argued in the Commonwealth's objections (DN 557), they are not properly before the court and will not be considered herein.

5

First, the Amendment created a new agreement, superseding the original. This court is not foreclosed from considering it, as a lower court may consider and decide any matter left open by a mandate.[12]

Second, the Court of Appeals indicated, albeit in dicta, that "A decree that did not, directly or indirectly, single out Sunrise in this manner would stand on different ground than the decree as it comes to us here."[13]  Thus, it appears that the Court of Appeals envisioned the possibility of a consent decree which does not focus on Sunrise. Our consideration of the Amendment is not at odds with the spirit of the Court of Appeals' decision.

Third, the right of Sunrise to be heard on its objections does not *ipso facto* entitle it to participate in settlement negotiations.  Its concerns can and should be addressed in a fairness hearing.  We reject the contention that the Amendment is unenforceable because Sunrise was not a participant in the amendment of the Settlement Agreement.

Additionally, *Vukovich*[14] indicates that the evaluation process may involve resolution by the parties of problematic language in a consent decree.  The court outlined the following process:

> Initially, a proposed decree should be preliminarily approved.  The court should determine whether the compromise embodied within the decree is illegal or tainted with collusion.   [citations omitted]…Notice should be given to all individuals who may be affected by the decree…The reasonableness hearing is a forum for all interested parties to comment on the proposed decree. [citations omitted]…The ultimate issue the court must decide at the conclusion of the hearing is whether the decree is fair, adequate, and reasonable…The Court has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties. [citations omitted]…If the court determines that the decree is problematic, it should inform the parties of its precise concerns and give them an opportunity to reach a reasonable accommodation…The court should articulate its "principled reasons" for rejecting a decree if the accommodation is not satisfactory. [citations omitted]. In making

---

[12] *Casey v. Planned Parenthood of Southeast. Penn.*, 14 F.3d 848 (3d Cir. 1994).
[13] *Pedreira II*, 802 F.3d at 872.
[14] *Vukovich*, 720 F.2d at 921.

the reasonableness determination the court is under the mandatory duty to consider the fairness of the decree to those affected, the adequacy of the settlement…and the public interest.

The parties proactively agreed to amend a seemingly problematic term in advance of the court's review.  We find no fault in their agreement to eliminate a provision which surely would have posed an obstacle to approval.

Finally, we note that the appellate mandate does not preclude the parties from engaging in settlement negotiations and reaching agreement on new terms.   By the same token, even agreement on a consent decree which is binding upon the parties is not  binding on the district court.[15]  "The entry of a consent decree is more than a matter of agreement among the litigants. It is a judicial act."[16]   Despite any agreement between the parties, the court must independently determine whether to place the "judicial imprimatur" on such an agreement, and approve terms only if the court finds them fair, reasonable, and consistent with the public interest.[17]

## B.  Lack of Consent

The Commonwealth defendants urge that, although they signed the Amendment, they never agreed to the entry of the amended Settlement Agreement as a consent decree.

---

[15] *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1242 (11th Cir. 1997).
[16] *League of United Latin American Citizens Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993)(en banc).  *See also, Vukovich*, 720 F.2d at 920 ("A consent decree…is also a final judicial order…Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties…").
[17] *Id.*

Both Sunrise and the Commonwealth defendants urge this court to find that this essential element in the formation of a consent decree - voluntary consent of all parties to the agreement – is lacking.[18]

The defendants rely upon language in the Settlement Agreement itself, contained in the original version and which remains unchanged by the Amendment, declaring that the agreement is not a consent decree and which purports to limit the post-entry enforcement powers of the court. The Court of Appeals found that this self-declaration did not operate to define the agreement in the face of other indicia of a consent decree. The defendants now urge that these terms evidence the intent of the parties, or lack thereof, at the time they agreed to settle the action.

The Commonwealth defendants committed, in the Amendment, to seek approval of the Settlement Agreement, as amended.  This Amendment was not entered into by the parties in a vacuum.  It was signed after the Sixth Circuit announced that the Settlement Agreement was, in fact, a consent decree. The Commonwealth defendants were on notice, yet agreed to amend the agreement and again seek the court's approval of it under the very same terms.  The Amendment states, in part, that the parties will jointly seek "(3) incorporation of the Settlement Agreement, as amended herein, into the order dismissing the Lawsuit; and (4) retention by the Court of jurisdiction to enforce that order."  These procedures formed the basis of the Court of Appeals' finding that the Settlement Agreement was a consent decree.[19]  The parties deliberately reasserted these terms in the Amendment.[20]

---

[18] *See, Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)(a consent decree is a voluntary settlement agreement which should be strictly construed to preserve the bargained-for position of the parties).

[19] *Pedreira II*, 802 F.3d at 871 ("Both of these key attributes are present here:  the court expressly retained jurisdiction to enforce compliance with the settlement's terms; and by incorporating the settlement into the court's own dismissal order, the court gave its imprimatur to the settlement's terms.").

[20] *Id*. at 872.

In light of these facts, the Commonwealth defendants are hard pressed to successfully argue that they did not agree to enter into a consent decree when they signed the Amendment.

## C.  No Amendment Possible

The Commonwealth defendants contend that the Court of Appeals vacated the original Settlement Agreement, rendering it null and void.[21]  They urge that the Amendment is of no affect, as thus there was no Settlement Agreement for the parties to amend.

A reading of *Pedreira II* reveals that this is not the case.  The original agreement was remanded to us for consideration of it as a consent decree, pursuant to *Lexington-Fayette Urban County Gov't.,*[22] and *Tennessee Assoc. of Health Maintenance Organizations v. Grier.*[23]  In reaching this determination, the Court of Appeals addressed only the implications of this court's treatment of the agreement. Finding that the incorporation of the agreement into the dismissal order and retention of jurisdiction over it required this court to afford the agreement a more intensive scrutiny, the Court of Appeals remanded the agreement for this court to revisit the matter and determine anew whether the Settlement Agreement should be approved as a consent decree.

The court thus rejects the argument that the Court of Appeals rendered the agreement null and void.

---

[21] DN 557, pp. 2-3.
[22] *Supra.*
[23] 262 F.3d 559, 566-67 (6th Cir. 2001)(the court must allow anyone affected by the decree to "present evidence and have its objections heard.").

9

### D.  Lack of Authority

Sunrise also argues that the attorney who signed the Amendment on behalf of the Commonwealth defendants, Deputy General Counsel for the Cabinet for Health and Family Service, Mona Womack, lacked authority to do so.  This is a curious contention since none of the actual parties to the Amendment have raised the "authority" issue.  Sunrise has not indicated how it has standing to assert this challenge, nor upon what specific factual basis it grounds such an argument.  The issue was raised in a letter from Governor Bevin's General Counsel,[24] referred to earlier in this opinion.  We have already determined that the contentions in the letter are not before the court.  At this point, Sunrise has no facts with which to support its "authority" argument. The sole "fact" referenced by Sunrise, lifted from the Bevin letter, is not evidence in the case and is not put forth by the Commonwealth defendants themselves.

The record in the case establishes that Womack appeared on August 25, 2014 on behalf of the Cabinet for Health and Family Services and the Justice and Public Safety Cabinet. Attorney Jonathan Goldberg was relieved as counsel on September 5, 2014.   The original Settlement Agreement was signed by Goldberg, outside counsel for the Commonwealth defendants, on March 12, 2013. Womack signed the Amendment for both agencies on November 19, 2015.  Signature by counsel of record is presumed to be valid unless the court is shown otherwise.  Therefore, we find that Womack possessed the authority to bind the Commonwealth defendants to the Amendment in this case because the court has been shown nothing to suggest otherwise.

---

[24] "We have found no evidence…that any non-attorney official of the Cabinet for Health and Family Services,…Justice and Public Safety Cabinet,…or Governor's office provided express authority to approve the Amendment."

II. Conclusion

The issue of approval of the amended Settlement Agreement is ripe.  Per the opinion of the Court of Appeals, we must treat the proposed amended Settlement Agreement as a consent decree and make determinations regarding fairness, adequacy, reasonableness and consistency with the public interest because the new proposed settlement agreement calls for the incorporation of the settlement into the court's dismissal order and retention of jurisdiction to enforce compliance with the settlement's terms.  The court's consideration of the agreement must include an opportunity for anyone affected by the decree to be heard.

Therefore, for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Motion of the Plaintiffs for Voluntary Dismissal with Prejudice and Approval of Settlement Agreement as a Consent Decree (DN 552) and the Joint Motion to Set Briefing Schedule on Defendants' Motion for Summary Judgment (DN 561) are **HELD IN ABEYANCE PENDING NOTICE AND A FAIRNESS HEARING TO BE SCHEDULED BY FUTHER ORDER OF THE COURT.**

December 21, 2016

**IT IS SO ORDERED.**

**Charles R. Simpson III, Senior Judge**
**United States District Court**

11