UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALICIA M. PEDREIRA, et al.                                                              PLAINTIFF

v.                                                                                    3:00-CV-210-CRS

SUNRISE CHILDREN'S SERVICES, INC., et al.                                           DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Sunrise Children's Services, Inc. f/k/a Kentucky Baptist Homes for Children, Inc. ("Sunrise"), for reconsideration of the court's December 22, 2016 Memorandum Opinion and Order. DN 573. Defendants Vicki Yates Brown Glisson, Secretary of the Cabinet for Health and Family Services, and John Tilley, Secretary of the Justice and Public Safety Cabinet (collectively, the "Commonwealth Defendants") join in the motion. DN 577.

The action was remanded to this court by the United States Court of Appeals for the Sixth Circuit. The Court of Appeals returned the case for the explicit purpose of having this court decide whether the agreement reached between the plaintiffs and the Commonwealth to settle the case, an agreement which it found was a consent decree, was fair, reasonable and consistent with the public interest. The Court of Appeals added the further directive that the court consider its observation that "the consent decree denie[d] Sunrise a chance to clear its name," and "impose[d] the very reputational harm that Sunrise sought to avoid by means of 15 years of

litigation." *Pedreira v. Sunrise Children's Services, Inc.*, 802 F.3d 865, 872 (6th Cir. 2015(("*Pedreira II*").

Within a week after the denial of the plaintiffs' motion for rehearing en banc by the Sixth Circuit, the parties entered into a First Amendment to Settlement Agreement (hereinafter "the Amendment"). The parties attempted to address the Court of Appeals' concern that the Settlement Agreement "single[d] out Sunrise by name for special monitoring by the ACLU and Americans United," *Id*. Sunrise was the sole objector to the Settlement Agreement at that time.

In the Amendment's "Recitals," the parties stated, in part, that:

> C. In light of this potential concern, the Parties desire to amend the Settlement Agreement to eliminate any "singl[ing] out" of or potential reputational harm to Sunrise by uniformly applying the same monitoring triggers and rules to all Agencies, as set forth in this Amendment.
>
> D. Further, in light of objections raised by Sunrise during briefing concerning the Settlement Agreement, the Parties desire to clarify that no new or modified administrative regulations need to be enacted to comply with the Settlement Agreement.

In the Amendment's "Agreement" section, the parties agreed, in pertinent part, to:

Section 1. <u>Modification of Section 3.</u>

> [Section 3 is deleted and replaced with new language which we do not recite here].

Section 2. <u>Approval of Settlement Agreement, as Amended; Dismissal of Lawsuit.</u>

> [The parties agree to file a joint motion seeking the court's approval of the Amendment, dismissal of the action with prejudice, incorporation of the Amendment into the order of dismissal, retention by the court of jurisdiction to enforce the order, and to otherwise cooperate as necessary to obtain relief].

Section 3. <u>No regulatory changes needed.</u> Notwithstanding any references in the Settlement Agreement to possible enactment of new or modified administrative regulations, the Parties agree that the Commonwealth Defendants do not need to enact or modify any administrative regulations to comply with the Settlement Agreement.

[Section 6(b) remains in the text of the Settlement Agreement, as amended, which requires the Commonwealth to initiate the process of modifying any administrative regulations necessary for the Commonwealth to comply with the terms of the Settlement Agreement].

Section 4. <u>No Effect Upon Other Terms of Settlement Agreement.</u> Except as explicitly stated in this Amendment, all terms of the Settlement Agreement shall remain in full force and effect, and the Parties shall continue to comply with the Settlement Agreement, as amended herein, including during the pendency of any further proceedings in, or relating to dismissal of, the Lawsuit.

[Apparently, to date, the Commonwealth continues to comply with the terms of the original Settlement Agreement].

A change in administration in Kentucky upon the election of Governor Matthew G. Bevin yielded a change in approach to the settlement of this action. The Commonwealth no longer supports the agreement forged with the plaintiffs. Faced with the refusal of the Commonwealth to join in a motion seeking approval of the amended agreement, the plaintiffs moved unilaterally for voluntary dismissal of the action with prejudice and approval of the Settlement Agreement, as amended, as a consent decree. DN 552. This motion, in and of itself, is a bit of an oxymoron, as it seeks entry of a consent decree to which only the plaintiffs consent at this time. Sunrise and the Commonwealth each filed objections to the plaintiffs' motion. In any event, the plaintiffs seek to hold the Commonwealth to the terms of the Settlement Agreement, as amended, and have urged the court to reject the defendants' many arguments in opposition to approval.

In an opinion entered in December, the court determined that the Settlement Agreement, as amended, remains a viable proposed consent decree in the case. The court intended to address a number of the defendants' arguments raised in opposition to the plaintiffs' motion for approval under the rubric of "fairness, reasonableness, and consistency with the public interest" at a hearing. However, concerned that the court had disregarded some of its arguments, and dissatisfied with a number of the court's findings, Sunrise filed a motion to reconsider the

December memorandum opinion and order. DN 573. Not unexpectedly, the plaintiffs opposed Sunrise's motion. DN 576.

Additionally, the Commonwealth filed a response to Sunrise's motion, joining in support and adopting *in toto* the arguments made by Sunrise in its motion to for reconsideration. DN 577. Counsel for the Cabinets, Justin D. Clark, signed the pleading on behalf of the Commonwealth. He is counsel of record by virtue of his entry of appearance on behalf of both Cabinets. DN 562. M. Steve Pitt and Chad Meredith, counsel from the Office of the Governor, are now also counsel of record for the Cabinets by virtue of the listing of their names as attorneys on this pleading. Local Rule 83.5(d).[1]

The Cabinets are now amply represented and purport to fully align themselves with the positions taken by Sunrise in this case. This alignment with Sunrise is diametrically opposed to the Commonwealth's previous position throughout the life of the Settlement Agreement and the Amendment.

The Court has determined that former counsel for the Cabinets, Mona Womack, had the authority to bind the Commonwealth to the Amendment and that the agreement in its original form is no longer operative, as it has been superseded by the Amendment.

The court rejected the defendants' argument that the Settlement Agreement, as amended, is unenforceable for lack of consent. The court reasoned that the Commonwealth's entry into the Amendment *after* the Court of Appeals recited the reasons why the agreement was, in fact, a consent decree (even though the agreement itself declared otherwise) established that the Commonwealth thereby knowingly agreed to entry of a consent decree. Further support for this conclusion is the inclusion of Section 2 of the Amendment listing the relief sought from the court

---

[1] The Governor of Kentucky is not a party to this action.

– this list itemizes the very terms which the Court of Appeals found were defining features of a consent decree.

This court has determined that the Court of Appeals did not vacate the original Settlement Agreement. Rather, the Court of Appeals required this court to afford the agreement more intensive scrutiny on remand.

We have concluded that consideration by this court of the Settlement Agreement, as amended, is not beyond the mandate of the Court of Appeals. We reached this conclusion for no less than four reasons. First, the Amendment created a new agreement, superseding the original. Thus the court is not foreclosed from considering it, as a lower court may consider any matter left open by a mandate. Second, the Court of Appeals apparently contemplated the possibility of a settlement not focused on Sunrise, stating that "A decree that did not, directly or indirectly, single out Sunrise in this manner would stand on different ground than the decree as it comes to us here." Therefore consideration of the Settlement Agreement, as amended, would not be at odds with the Court of Appeals' decision. Third, the acknowledged right of Sunrise to be heard on the matter of fairness did not entitle Sunrise to participate in the drafting of the Amendment. Fourth, in keeping with the process for evaluating a consent decree, as set forth in *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983), the court must inform the parties of any concerns with a proposed consent decree and give them an opportunity to reach a reasonable accommodation. Therefore, the parties' proactive agreement to amend seemingly problematic terms in advance of this court's review does not appear to be improper.

The defendants urge two errors in the court's December decision, and seek a ruling on two issues not addressed therein.

The defendants take issue with the court's statement in a footnote that "Section 12 of the original Settlement Agreement remains as the only section to mention Sunrise: 'Section 12. <u>No admission of liability</u>…'" DN 572, p. 4, n. 7.  This footnote supplements the text of the opinion discussing the Amendment's "alteration to the agreement as originally written *with respect to the treatment of Sunrise*."  DN 572, p. 4 [emphasis added].  This "treatment" is, of course, the "singl[ing] out [of] Sunrise by name for special monitoring by the ACLU and Americans United…" which the Court of Appeals suggested denied Sunrise a chance to clear its name and imposed reputational harm on Sunrise with respect to alleged unconstitutional activities which have never been proven.  *Id.*  The Court of Appeals' concern about "singling out" Sunrise for special monitoring was apparently an implication of liability which might be drawn from being singled out by name for individualized treatment.  This court noted that, in response to that concern, "Section 3 was deleted entirely and replaced with provisions which do not mention Sunrise…" *Id.*  In the interest of completeness on this point, the court then quoted in footnote Section 12 of the agreement which expressly denies the allegations against Sunrise, and notes that the claims against Sunrise are contested and unproven.  Section 12 was in the original agreement and remains in the Settlement Agreement, as amended.

The defendants note that Sunrise's name also appears twice in the "Recitals," four times in Section 7, and twice in Section 11 of the original Settlement Agreement, and five times in the Amendment, urging that "the notion that Sunrise has been purged from the putative 'consent' decree is patently wrong." DN 573-1, p. 4, n. 2.  Purging is not the point, however.  The singling out of Sunrise for special monitoring is the point.  The Court of Appeals said nothing, nor did we, about cleansing the agreement of all references to Sunrise.  That is, as Sunrise itself admits, impossible, as the very reason for the agreement (as with virtually all settlements) is the

resolution of as-yet unproven claims. This is precisely what is stated in Section 12. The Court of Appeals suggested that the singling out of Sunrise by name for special monitoring yielded an implication of wrongdoing, not because its name was mentioned, but rather because it was singled out and targeted for special treatment. Sections 3 and 12 of the Settlement Agreement, as amended, are at the heart of this issue.[2] The references to Sunrise in the Recitals identify the caption and subject of the lawsuit. The references to Sunrise in Section 7 relate to the release of all claims and covenant not to sue. The references in Section 11 direct the return of documents. The references to Sunrise in the "Recitals" section of the Amendment are in the context of describing the Court of Appeals' "singling out" concern and the parties' desire to alleviate it.

The defendants take issue with the court's statement in the December opinion that "the only change to the agreement made by the Amendment" was the deletion of the original Section 3 and replacement of it with new text which was set out in full in the Amendment. DN 572, p. 4. The court's statement is correct.

Sunrise suggests that the agreement was "changed" with respect to the other child-caring agencies that contract with the Commonwealth because new Section 3 imposes "far wider and harsher terms on *all* agencies." Indeed, Sunrise made this same argument in its initial objections to the plaintiffs' motion. This argument, however, is one of implication. The "change" of which the defendants speak is an outcome they suggest is borne of language embodied within the text of new Section 3. The court acknowledged that the new text was a rewrite of the section in its entirety. This argument concerning the implications of rewritten Section 3 would be a matter for a fairness hearing, to the extent the defendants could establish standing to challenge the

---

[2] Sunrise is free to argue that the mere mention of its name numerous times in the agreement is sufficient to taint its reputation. Such a suggestion would be proper argument in a fairness hearing addressing the Settlement Agreement, as amended. However, this argument differs from the "singling out" concern identified by the Court of Appeals which was directed at the particularized treatment of Sunrise in the original agreement.

fairness of this provision to other agencies. Other agencies affected by this provision will be afforded an opportunity to address their concerns, if any, to the court if the matter proceeds to a fairness hearing.

In a similar vein, the defendants claim that Section 3 of the Amendment in which the parties state that no regulatory changes are necessary to implement the agreement "effectively excise[s] Section 6(b) of the Agreement – yet another significant change overlooked by [this Court's December] Opinion." DN 573-1, p. 6. Section 3 of the Amendment does not change to the agreement. Section 6(b) of the original Settlement Agreement remains as written. Rather, Section 3 of the Amendment purports to confirm the parties' agreement that, despite the language of Section 6(b) requiring the Commonwealth to begin the administrative process to amend regulations necessary for implementation of the agreement, no such amendments are, in fact, necessary for implementation. Both Sunrise and the Commonwealth take issue with the legality of this decision not to pursue regulatory changes. The court will address this point later herein. With respect to the objection to our December opinion, however, the Amendment does not "change" Section 6(b) of the original agreement as the defendants suggest. Instead, the Amendment signals the Commonwealth's intended action, or lack thereof, with respect to the provision.

The defendants urge that any enforcement of the Amendment by this court would contravene *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) on the ground that after this court's earlier dismissal, this court lacks jurisdiction to enforce the Settlement Agreement, as amended. The court finds this argument to be without merit.

This court regained jurisdiction over the case upon issuance of the mandate by the Sixth Circuit. *Nina Shahin v. PNC Bank NA*, No. 16-3952, 2017 WL 838270 (3d Cir. March 3, 2017),

*quoting United States v. Rivera*, 844 F.2d 916, 921 (2d Cir. 1988) and *Arenson v. S. Univ. Law Ctr.*, 963 F.2d 88, 90 (5th Cir. 1992). Consideration by this court of the Settlement Agreement, as amended, has already been determined by this court not to exceed the mandate of the Sixth Circuit. *Kokkonen*, then, has no application here, as issuance of the mandate by the Sixth Circuit and its directive on remand reestablished this court's jurisdiction to proceed.

The defendants emphasize that the Amendment was entered into by the parties prior to issuance of the mandate before the court regained jurisdiction. We find no infirmity there. The court has already found that the parties were free to enter into a new agreement. We find nothing about the timing of the Amendment that impacts the jurisdiction of this court.

Finally, the defendants contend that *Lorain NAACP v. Lorain Board of Education*, 979 F.2d 1141, 1153 (6th Cir. 1992) precludes this court from enforcing the Settlement Agreement, as amended, without first finding a constitutional violation. The facts underlying *Lorain* are distinguishable from the case at bar. In *Lorain*, a consent decree imposing institutional reform had been approved and was being monitored by the court. The court later determined, over objection, that it was appropriate to increase the maximum liability of the Ohio Department of Education under the decree. The Sixth Circuit held that "a district court may not, in the name of modification, circumvent the express terms of a defendant party's consent in the absence of an adjudicated or admitted violation of law. In the absence of an adjudication or admission of constitutional violation, the district court's authority to impose additional obligations on a defendant is constrained by the terms of agreement entered by the parties to the consent decree." *Lorain*, 979 F.2d at 1153.

The principle announced in Lorain has no application to the case at bar. Here, the court is not seeking to modify an existing consent decree. We have been asked to review for fairness,

reasonableness, and consistency with the public interest the agreed terms of a proposed consent decree. The fact that the Commonwealth now seeks to withdraw its consent and objects to its approval does not bring this matter under the principles of *Lorain.*

With joinder by the Commonwealth in the objections to the motion for approval of the Settlement Agreement, as amended, the court is now faced squarely with a threshold issue: whether the Commonwealth may withdraw because performance of the agreement, as written, would be illegal. The Commonwealth took the opposite position in opposing Sunrise's challenge earlier in the case that the original agreement was void for failure to promulgate appropriate regulations. It urged at that time that Sunrise had no standing to raise the argument, and that Kentucky regulations already existed which encompassed the terms of the settlement. DN 521, pp. 13-17. With respect to the newly-minted Settlement Agreement, as amended, the plaintiffs state that "[Section 3] of the Amendment simply reduces to writing what the Plaintiffs and the Commonwealth Defendants had previously reported to the Court," and what the court had already accepted. DN 576. The problem with this response is that we have a new agreement before us which the court has not yet considered under the consent decree regime. The original agreement has been superseded. The court must review this agreement as a consent decree which, as a threshold matter, must be shown to be legal. The Commonwealth unequivocally states that

> The original Settlement Agreement expressly contemplated amended regulations, a process that would have required ordinary procedural due process protections. The Court's initial approval of the Settlement Agreement endorsed these protections. Plaintiffs now seek to gain through a truncated, involuntary consent decree what they cannot rightly achieve through Kentucky's legislature or executive branch agencies. Commonwealth Defendants, however, cannot agree to do something in a consent decree that would be unlawful under state law.

DN 577, p. 2.

While we reject the suggestion that this is an "involuntary" proposed consent decree for the reasons stated in the December opinion, we do appreciate the fact that this court may not approve a consent decree which is illegal and, therefore, contrary to the public interest. *Vukovich*, 720 F.2d at 925.  Courts have found that a mere change of heart by a party is an insufficient ground to reject a consent decree, but illegality is another matter.  While a consent decree, as a matter of contract, may be binding upon the parties, it is not binding upon the court.  The court being charged with finding fairness, reasonableness and consistency with the public interest before placing its judicial imprimatur on a consent decree, we must reject an agreement whose performance would be illegal.  *Stovall v. City of Cocoa, Florida*, 117 F.3d 1238, 1242 (11th Cir. 1997); *Reynolds v. Roberts*, 251 F.3d 1350, 1358 (11th Cir. 2001); *Vukovich*, 720 F.2d at 925.

Sunrise's reply brief (DN 378), in which the Commonwealth joins, discusses in detail at pages 4-11 the grounds for its argument that the Settlement Agreement, as amended, illegally circumvents modifications to regulations which are required for implementation of the agreement.[3]  As this additional detail was provided in reply, the court has not been favored with a response by the plaintiffs.  The Commonwealth defendants also weighed in on this issue after the plaintiffs' response.  DN 577, pp. 2-4.

Therefore, **IT IS HEREBY ORDERED AND ADJUDGED** that the motions of the defendants, Sunrise Children's Services, Inc., *et al.,* for reconsideration of the court's December 22, 2016 Memorandum Opinion and Order (DNs 573, 577) is **GRANTED**.  The court **DENIES IN ALL RESPECTS THE REQUEST TO VACATE THE DECEMBER 22, 2016**

---

[3] It is no argument that the changes have already been implemented, without regulatory amendment, under the original agreement.  The Settlement Agreement was a valid private settlement until the Court of Appeals ruled otherwise.  As the original agreement has been superseded by the Settlement Agreement, as amended, the court must address this issue as presently raised in addressing the motion for approval of the agreement.

**MEMORANDUM OPINION AND ORDER WITH THE EXCEPTION OF THE QUESTION AS TO THE LEGALITY OF THE IMPLEMENTATION OF THE SETTLEMENT AGREEMENT, AS AMENDED, WITHOUT MODIFICATION OF EXISTING REGULATIONS. THIS EXCEPTED ISSUE IS HELD IN ABEYANCE PENDING FURTHER BRIEFING AS FOLLOWS:**

(1) The plaintiffs, Alicia Pedreira, et al., shall file a response to the arguments set forth in pages 4-11 of DN 578, Sunrise's Reply, and pages 2-4 of DN 577, the Commonwealth's Response, **no later than thirty (30) days from the date of entry of this order.**

(2) The defendants, Sunrise Children's Services, Inc. and Vicki Yates Brown Glisson, Secretary of the Cabinet for Health and Family Services, and John Tilly, Secretary of the Justice and Public Safety Cabinet, shall file replies **no later than thirty (30) days from the date of service of the plaintiffs' response.**

(3) Upon the expiration of the briefing period, this issue shall stand submitted to the court for decision.

This Memorandum Opinion and Order supplements the Court's December 22, 2016 Memorandum Opinion and Order and should be read in conjunction therewith.

**IT IS SO ORDERED.**

March 16, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**