**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| ALICIA M. PEDREIRA, *et al.*, | ) | |
| | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:00-CV-210-S |
| | ) | |
| SUNRISE CHILDREN'S SERVICES, INC., | ) | **Electronically Filed** |
| F/K/A KENTUCKY BAPTIST HOMES | ) | |
| FOR CHILDREN, INC., *et al.*, | ) | |
| | ) | |
|     *Defendants*. | ) | |
| | ) | |

**PLAINTIFFS' PROTECTIVE, PRELIMINARY OPPOSITION TO
SUNRISE'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs and the Commonwealth Defendants have moved for a 45-day extension of time—to January 18, 2021—to respond to Sunrise's Motion for Summary Judgment. DN 617. That motion for extension is pending. In the interim, to avoid the possibility of any sort of waiver, Plaintiffs hereby file this protective, preliminary opposition to Sunrise's Motion for Summary Judgment. If the Court grants the motion for extension, Plaintiffs will file a full opposition no later than January 18, 2021.

    1.    Sunrise filed the summary judgment motion presently at issue in November 2012. DN 480 (the "SJ Motion"). The SJ Motion, however, is largely duplicative of (1) a motion to dismiss that Sunrise filed near the outset of the case (when it was known as Kentucky Baptist Homes for Children), on June 30, 2000 (DN 17), and (2) a prior motion for summary judgment that the Commonwealth Defendants filed on August 23, 2000 (DN 24). This Court rejected both of those predecessor motions (except with respect to the employment discrimination claims, which are not at issue here) in its July 23, 2001 opinion. DN 53, 54. Further, in orders dated April 16, 2003 and November 17, 2003, this Court held that Plaintiffs had already presented sufficient evidence that Sunrise is pervasively sectarian and diverts government funds to religious uses to allow Plaintiffs to proceed with their

Establishment Clause claims. DN 110, 131. Accordingly, this Court has already decided the issues presented by Sunrise's SJ Motion. Sunrise offers no valid reason for the Court to reverse its prior decisions. Indeed, those decisions were subsequently bolstered by the Sixth Circuit's decision in *Teen Ranch, Inc. v. Udow*, 479 F.3d 403, 409, 411-12 (6th Cir. 2007), which held that the Establishment Clause prohibited a state from funding a religious childcare facility that incorporated religious programming into its services. Thus, Plaintiffs have presented sufficient evidence to establish genuine disputes of material fact on whether there is a constitutional violation, and indeed to show that Sunrise is pervasively sectarian and has used government funds to promote and support religious activities.

2. In the alternative, in accordance with Federal Rule of Civil Procedure 56(d), Plaintiffs should be given the opportunity to engage in further discovery before responding to the SJ Motion. Under Rule 56(d), where a party opposing summary judgment can show that, "for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). This rule "has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *United States v. Kentucky Manor Apartments, Ltd.*, No. 5:15-CV-00167-TBR, 2016 WL 1261157, at *2 (W.D. Ky. Mar. 30, 2016).

3. Importantly, Sunrise did not file the SJ Motion following the close of discovery, as would be typical, but rather in the middle of the discovery process, when Plaintiffs were on the cusp of finally being permitted to obtain critical information from former residents of Sunrise facilities who had complained about religious proselytization. In particular, as of November 2012, when Sunrise filed the SJ Motion, Sunrise had for years engaged in a protracted—and largely effective—battle to prevent Plaintiffs from completing

discovery.  Before the Court had fully resolved several major discovery issues around production of records regarding Sunrise's use of government funds to proselytize and coerce children to participate in religious rites and activities, the Commonwealth Defendants and Plaintiffs progressed to serious settlement discussions.  Thus, although the Court on August 30, 2012 affirmed Magistrate Judge Moyer's July 18, 2007 order requiring production of children's files (DN 469), Judge Moyer stayed such production and all other discovery so that the parties could focus on settlement (DN 497).  Judge Moyer stated:

> During the stay, the parties will not propound or respond to any discovery requests, engage in any informal discovery or investigation, or present any briefing to the Court (formally or informally) on any new or pending discovery disputes or any substantive matters whatsoever, including but not limited to issues pertaining to contacting former Sunrise residents and employees, obtaining access to former Sunrise residents' case files, or inspecting any Sunrise facilities. . . . No party shall, in advocating or opposing summary judgment or any discovery, rely in any way on any party's agreement to this stay; for example, no party shall argue that by agreeing to this stay, an opposing party was dilatory in pursuing or opposing discovery, and neither party shall waive their right to argue that discovery is either material or immaterial to the pending summary judgment motions.

*Id.* ¶¶ 3, 6.  Shortly thereafter, the entire case was stayed when Plaintiffs and the Commonwealth Defendants entered into a settlement.  DN 501.  So, although many years have passed since Sunrise filed the SJ Motion, for nearly all of that time discovery has been on hold and the case has been stayed.

      4.     To this day, Defendants still have not provided Plaintiffs with the identities of any children who resided at Sunrise facilities, or unredacted documents from any children's files.  Indeed, Defendants have failed to comply with an order this Court entered more than eight years ago requiring them to provide Plaintiffs with the identities of children who complained of religious proselytization at Sunrise facilities.  *See* DN 469 at 12-13.  Without this discovery, Plaintiffs have not been able to interview or depose Sunrise's former

3

residents. Moreover, there is a strong likelihood that this discovery will produce significant and material evidence, as some of the most compelling evidence produced earlier in the discovery process came from exit surveys of children who had resided at Sunrise. *See* DN 522 at 16-18 (compiling and summarizing evidence of Sunrise's religious proselytization and coercion, including particularized complaints from at least 85 different children). Plaintiffs must be given the opportunity to complete their discovery into the experiences of such children, who were firsthand witnesses to Sunrise's discrimination and proselytization.

5. In addition, because of the prior stays, Plaintiffs have not had an opportunity to depose Sunrise's employees and officers regarding Sunrise's financial documents, which were not produced until after Plaintiffs conducted depositions of certain Sunrise employees. Plaintiffs are entitled to take this discovery as well before responding to the SJ Motion.

6. Further, the evidence relied upon by Sunrise in its eight-year-old SJ Motion is stale, and Plaintiffs need the opportunity to update and supplement the record. All of the discovery cited in the SJ Motion pertains to Sunrise's practices before 2012. All of the deposition testimony cited was taken in 2010 or earlier—over a decade ago. This is a case seeking injunctive relief based on the Defendants' ongoing practices; current evidence is warranted. For example, Plaintiffs need to be able to depose or interview current or recent Sunrise employees and recent residents. Moreover, in its SJ Motion, Sunrise relies heavily on its finances and accounting to argue that there is no Establishment Clause violation. Without conceding the relevance or import of such information, Plaintiffs are, at a minimum, entitled to discovery concerning Sunrise's current financial and accounting information, and to probe that information through depositions and other follow-up discovery. In addition, since the existing discovery was obtained, there have been several changes in gubernatorial administrations, as well as high-level personnel at the Commonwealth Defendants, and

Plaintiffs are entitled to discover whether and how their funding practices towards Sunrise have changed in the last decade.

7. Finally, it is apparent that Sunrise did not file the SJ Motion in 2012 because the record was sufficiently developed at that time to warrant judgment as a matter of law. Rather, Sunrise filed the SJ Motion in a transparent attempt to scuttle the then-ongoing settlement discussions between Plaintiffs and the Commonwealth Defendants. On November 13, 2012, the parties had participated in a telephonic settlement conference with Magistrate Judge Moyer, and on November 20—one day before Sunrise filed the SJ Motion—Judge Moyer set an in-person settlement conference for November 30. Sunrise then filed the SJ Motion and relied on its pendency to argue that the Court should reject the proposed settlement agreement (DN 514 at 17), an argument that this Court repeatedly rejected (DN 505 at 3; DN 527 at 9 n.8). Accordingly, the timing of the SJ Motion reinforces that it is premature, and that Plaintiffs should be permitted to take further discovery before having to respond.

8. In light of the protective, preliminary nature of this filing, Plaintiffs do not intend to exhaustively rebut each of Sunrise's arguments presented in the SJ Motion. Nevertheless, the following points bear emphasis:

   a. Sunrise argues there can be no Establishment Clause violation because its purportedly secular expenditures exceed the funding it receives from the Commonwealth Defendants, and because Sunrise has structured its accounting in a way to avoid any such violation. *See* SJ Motion at 15, 23, 25, 27, 30, 32. But "[t]he Supreme Court has systematically rejected attempts to unbundle religious activities through statistics and accounting," *Freedom From Religion Found. v. McCallum*, 179 F. Supp. 2d 950, 974 (W.D. Wis. 2002), for "a mere statistical judgment will not suffice as a guarantee that state funds will not be

5

used to finance religious education," *Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 778 (1973); *see also id*. at 977-79 & n.36. Because Sunrise is pervasively sectarian, it is impossible to segregate its secular activities from its sectarian ones and fund only the former. *See Americans United for Separation of Church & State v. Prison Fellowship Ministries*, 432 F. Supp. 2d 862, 923 (S.D. Iowa 2006) (rejecting argument by funding recipient that "the state of Iowa pays . . . for only those aspects of the program that are non-sectarian in nature" because there was "no way to accurately account for any employee's time in the [] program in such a pervasively sectarian context"), *aff'd in relevant part,* 509 F.3d 406 (8th Cir. 2007).

b. Sunrise argues that there is "not even a factual basis to support Plaintiffs' assertion that Sunrise's services are pervasively sectarian." SJ Motion at 31. Not so. This is a hotly contested issue and genuine disputes of material fact abound. Even from the limited discovery conducted before Sunrise filed the SJ Motion in November 2012, the evidence has shown that Sunrise is pervasively sectarian, which creates a rebuttable presumption that public funding of Sunrise by the Commonwealth Defendants supports Sunrise's religious mission and thus violates the Establishment Clause. *See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 295-96 (6th Cir. 2009); *see also Teen Ranch*, 479 F.3d at 409, 411-12. Indeed, the evidence developed thus far shows that children at each of Sunrise's facilities had complained of specific instances of religious proselytization, coercion, and discrimination. *See* DN 522 at 16-18. Additional evidence of similar complaints is contained in monitoring documents that were provided by the

6

Commonwealth Defendants to the Plaintiffs during early implementation of the parties' settlement.[1] Construing all facts in Plaintiffs' favor, summary judgment is inappropriate.

9. The foregoing is a summary of the reasons that Sunrise's SJ Motion should be denied. If the Court grants the requested extension, Plaintiffs will file a complete opposition no later than January 18, 2020.

Dated: December 4, 2020

Respectfully submitted,

*/s/ David B. Bergman*
David B. Bergman
Ian S. Hoffman
R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
david.bergman@arnoldporter.com

Daniel Mach
ACLU FOUNDATION
915 Fifteenth Street, N.W.
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

Alex J. Luchenitser
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
1310 L Street, N.W., Suite 200
Washington, DC 20005
(202) 466-7306
luchenitser@au.org

Corey M. Shapiro
Heather L. Gatnarek
ACLU OF KENTUCKY FOUNDATION, INC.
315 Guthrie St., Suite 300
Louisville, KY 40202

---

[1] If the pending extension motion is granted, Plaintiffs would submit these monitoring materials under seal—as well as other supporting evidence—with a complete summary judgment opposition.

(502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org

*Counsel for Plaintiffs*