UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:00-CV-00210-CRS

| | | |
|---|---|---|
| ALICIA PEDREIRA, ET AL., | ) | |
| | ) | |
| PLAINTIFFS, | ) | **SUNRISE CHILDREN'S SERVICES'** |
| | ) | **OPPOSITION TO JOINT MOTION** |
| | | **FOR VOLUNTARY DISMISSAL** |
| | ) | |
| SUNRISE CHILDREN'S SERVICES | ) | |
| INC., ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

Respectfully submitted,


*/s/ John O. Sheller*
John O. Sheller
Jeffrey A. Calabrese
Steven T. Clark
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, KY 40202
Phone: (502) 333-6000
john.sheller@skofirm.com
jeff.calabrese@skofirm.com
steven.clark@skofirm.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

I.      INTRODUCTION.......................................................................................1

II.    ARGUMENT ..............................................................................................2

      A.      **Plaintiffs have provided no reason for the Joint Motion to be considered before Sunrise's earlier-filed summary-judgment motion**..............................................................................................2

               *Estate of Butler v. Maharishi University of Management & Maharishi Vedic Education Development Corp.*, 2008 U.S. Dist. LEXIS 135535 (S.D. Iowa May 7, 2008) ........................................................................................2

      B.      **Sunrise clearly has standing to object to the Joint Motion** ....................4

               *Pedreira v. Sunrise Children's Serv.*, 802 F.3d 865 (6th Cir. 2015) .......4, 6

               *Pedreira v. Sunrise Children's Serv.*, 826 F.App'x 480 (6th Cir. 2020) .....4

               *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020))...................................................................................5

               *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020) ......5

               *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017)..............................................................................................................5

               *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002)........................................5

               *Mitchell v. Helms*, 530 U.S. 793 (2000) .....................................................5

               *Allen v. Collins*, 2010 U.S. Dist. LEXIS 89575 (N.D. Ohio Aug. 4, 2010) .............................................................................................................6

               *Sibron v. New York*, 392 U.S. 40 (1968)......................................................6

               *Reno v. Bossier Parish School Board*, 528 U.S. 320 (2000) ......................6

               *Ability Center of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003 (N.D. Ohio 2011) ......................................................................................6

               *Friends of the Earth, Inc. v. Laidlaw Environmental Services, (TOC), Inc.*, 528 U.S. 167 (2000)................................................................................6, 7

*Jones v. City of Lakeland*, 224 F.3d 518 (6th Cir. 2000) ............................7

**C.**      **Sixth Circuit precedent does not require the Court to automatically grant the Joint Motion** ............................................................................**7**

*Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964) ...............................7

    **1.**  ***Unlike in* Smoot*, denial of the Joint Motion will not result in immediate trial of a claim that Plaintiffs wish to concede* .................8**

        *Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964) ...........................8

        *Estate of Butler v. Maharishi University of Management & Maharishi Vedic Education Development Corp.*, 2008 U.S. Dist. LEXIS 135535 (S.D. Iowa May 7, 2008) ........................8

        *Pedreira v. Sunrise Children's Services*, 2014 U.S. Dist. LEXIS 88558 (W.D. Ky. Jun. 30, 2014) ................................8

        *Pedreira v. Sunrise Children's Services*, 802 F.3d 865 (6th Cir. 2015) .................................9

    **2.**  **Smoot *did not involve a third party to the litigation and non-parties that would be prejudiced by the Court allowing the plaintiff to dismiss his case*** ...................................................................9

        *ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66 (1st Cir. 2006) ......................................9

        *County of Santa Fe v. Public Service Company of New Mexico*, 311 F.3d 1031 (10th Cir. 2002) .................9

        *Wheeler v. Home Products Corp.*, 582 F.2d 891 (5th Cir. 1977) .........9

        *Moore's Federal Practice* § 41.40[3] (3d ed. 2005) ..........................9

    **3.**  ***Unlike in* Smoot*, granting the Joint Motion here will not bar further action between the parties*** .................................................**10**

        *Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964) ...........................10,11,12

        *See Samsung Electronics Co. v. Rambus, Inc.*, 440 F. Supp. 2d 495 (E.D. Va. 2006) .................................12

        *Semtek, International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2002) .................................12

**D.**      **The Court should not grant the Joint Motion because it is premised on an unenforceable settlement agreement that will not bring finality to this matter** ............................................................**12**

*Pedreira v. Sunrise Children's Serv.*, 826 F.App'x 480 (6th Cir. 2020) ...12

*Pedreira v. Sunrise Children's Services*, 2014 U.S. Dist. LEXIS 88558 (W.D. Ky. Jun. 30, 2014) .................................................................12, 13

*Pedreira v. Sunrise Children's Services*, 802 F.3d 865 (6th Cir. 2015) ...........................................................................................13

KRS 13A.222 ...........................................................................................14

KRS 13A.240 ...........................................................................................14

KRS 13A.250 ...........................................................................................14

KRS 13A.270 ...........................................................................................14

KRS 13A.280 ...........................................................................................14

*Pedreira v. Kentucky Baptist Homes for Children*, 579 F.3d 722 (6th Cir. 2009) .........................................................................................15

**E.**      **The agreement is unlawful because it purports to bind one or more subsequent executive administrations to its terms** ................................**15**

*Stone v. Mississippi*, 101 U.S. 814 (1879) .................................................16

*In re Gillis*, 836 F.2d 1001 (6th Cir. 1988) ...............................................16

**III.**      **CONCLUSION** .................................................................................**16**

Defendant Sunrise Children's Services, Inc. ("Sunrise"), by counsel, responds to the joint motion of the Plaintiffs and the Commonwealth Defendants for voluntary dismissal (DN 632) (the "Joint Motion") as follows:

## I.     INTRODUCTION

It is time for this case to come to an end, but not in the manner ostensibly contemplated by the Joint Motion. Plaintiffs provide no reason why the Joint Motion should be considered by the Court before Sunrise's earlier-filed, fully-briefed summary-judgment motion. The twenty-one-year history of this case demonstrates the opposite: Plaintiffs' two prior "settlement" attempts were both rejected by the Sixth Circuit, leading to nearly a decade of <u>additional</u> litigation (so far!).  Now, Plaintiffs are crying "wolf!" to the Court for a third time. No bilateral settlement agreement can actually end this case once and for all. The most expeditious and only fair way to resolve the matter is for the merits of Sunrise's long-pending summary-judgment motion to be considered.

Even if the Court were to address the Joint Motion, the Sixth Circuit has held (twice) that Sunrise may challenge any "settlement" between the other parties that imposes or ratifies unlawful terms to the detriment of Sunrise. And, contrary to Plaintiffs' assertions, Sixth Circuit precedent does not require the automatic granting of a motion for voluntary dismissal under the circumstances presented in this case.

The Joint Motion should be denied because the settlement agreement on which it is premised is unenforceable and fails to resolve this matter. The agreement purports to effect sweeping changes to Kentucky's childcare system that can be implemented only through the enactment of administrative regulations—something neither Plaintiffs nor Commonwealth Defendants can guarantee will ever occur. Because the agreement is conditioned on the enactment of regulations that may never exist, it is contingent, speculative, and illusory. Further, the

1

settlement agreement is unlawful because it purports to bind at least one or more subsequent executive administrations to its terms. The Court should deny the Joint Motion.

## II.     ARGUMENT

### A.     Plaintiffs have provided no reason for the Joint Motion to be considered before Sunrise's earlier-filed summary-judgment motion.

Plaintiffs claim that the Joint Motion should be considered before Sunrise's earlier-filed (over eight years earlier) summary-judgment motion. (DN 636, Pls.' Resp. to Mot. for Extension). According to Plaintiffs, the Joint Motion will moot Sunrise's summary-judgment motion. But, this provides no reason for the Court to consider the Joint Motion before ruling on Sunrise's fully-briefed summary-judgment motion.

To begin with, the Joint Motion's alleged potential to moot Sunrise's summary-judgment motion cannot serve as justification for the Joint Motion to be considered before the summary-judgment motion because the opposite is also true: Sunrise's summary-judgment motion, if granted, will moot the Joint Motion. All things being equal, the earlier-filed summary-judgment motion should be considered first. *See Estate of Butler v. Maharishi Univ. of Mgmt. & Maharishi Vedic Educ. Dev. Corp.*, 2008 U.S. Dist. LEXIS 135535, at *3-5 (S.D. Iowa May 7, 2008) (rejecting plaintiff's argument it would be error to consider pending summary-judgment motion before motion for voluntary dismissal).

Further, when all the other collateral consequences are considered, it becomes even more clear that the summary-judgment motion should be decided before the Joint Motion. The summary-judgment motion presents the most, if not the only, straightforward path to expeditiously resolve this dispute with finality. If summary judgment is granted, Plaintiffs may choose to file an

appeal to the Sixth Circuit.[1] But, after that, the matter will be fully and finally resolved on the merits (barring an unlikely grant of certiorari by the U.S. Supreme Court).

On the other hand, if the Joint Motion is granted, Sunrise will file an appeal to the Sixth Circuit, which has already rejected two prior versions of the settlement agreement that supposedly justifies Plaintiffs' voluntary dismissal of this action. Further, the settlement agreement all but ensures that collateral consequences, no doubt resulting in continued litigation, will persist for years into the future. The settlement requires Kentucky to enact administrative regulations. This entails a lengthy regulatory process, and there is no guarantee the necessary regulations will ever be enacted. If the necessary regulations are not enacted, the settlement agreement expressly provides Plaintiffs with the right to declare the agreement "null and void." (DN 633-1, Agmt. § 6(a)). If Plaintiffs void the agreement, they will be free to pursue further litigation relating to their Establishment Clause claim or reactivate this action.

Indeed, the putative settlement agreement expressly contemplates that further lawsuits relating to the same underlying dispute may be necessary. (*Id.* §§ 9, 10).[2] Additionally, the putative agreement vests ongoing enforcement responsibility in this Court. (*Id.* § 11).

Moreover, Plaintiffs cannot demonstrate any prejudice will occur if the summary-judgment motion is decided first. No new administrative regulations or changes to Kentucky's private childcare system would be necessary in the first place if the Court grants Sunrise's summary-

---

[1] A passive observer might, of course, wonder why Plaintiffs would appeal an adverse summary judgment ruling in a case they purportedly wish to dismiss. More on that later.

[2] The only apparent difference between the current iteration of the settlement and the two prior agreements rejected by the Sixth Circuit is that here the parties may be able to pursue enforcement in another court. But, that is a distinction without a difference because, at best, this changes only the forum. It does not change the fact that there is still an ongoing dispute and still litigation relating to it.

judgment motion, thereby finding that Plaintiffs' Establishment Clause claim lacks merit. The Court should rule on Sunrise's summary-judgment motion before it considers the Joint Motion.

**B.      Sunrise clearly has standing to object to the Joint Motion.**

Plaintiffs insinuate that because Sunrise has not signed a new private childcare agreement with the Cabinet for Health and Family Services, the case is somehow moot. (DN 632, Joint Motion at 3).[3] This is wrong. Sunrise thoroughly rebutted this argument in its reply to the Commonwealth Defendants' summary-judgment response. (DN 630 at 8-11). That argument is incorporated by reference here. Nor does Plaintiffs' third attempt at a settlement render the case moot.

Twice now, the Sixth Circuit has issued appellate mandates that expressly permitted Sunrise to challenge "settlement" terms that Plaintiffs and Commonwealth Defendants attempted to foist on Sunrise involuntarily by declaring them mandatory contract terms. *See Pedreira v. Sunrise Children's Servs.*, 802 F.3d 865, 872 (6th Cir. 2015) (hereafter "*Pedreira I*"); *Pedreira v. Sunrise Children's Servs.*, 826 F. App'x 480, 495-96 (6th Cir. 2020) (hereafter "*Pedreira II*"). The Sixth Circuit never conditioned Sunrise's right to challenge unlawful settlement terms on the existence of a current contract between Kentucky and Sunrise. Rather, the Sixth Circuit reaffirmed its duty to review any settlement agreement between Plaintiffs and Commonwealth Defendants when challenged, regardless of whether the Commonwealth Defendants had already incorporated the settlement agreement into their childcare contracts. *See Pedreira II*, 826 F. App'x at 495.

The unlawful terms contained in the current form private childcare provider agreement, which Sunrise has declined to sign, are the result of and part and parcel to this litigation. Kentucky did not spontaneously decide to alter its contracts to the detriment of Sunrise (and other faith-based

---

[3] Since the expiration of Kentucky's private childcare agreement with Sunrise on June 30, 2020, Kentucky has continued to place children with Sunrise and continued to reimburse it for its services.

providers). Rather, changes to Kentucky's current form contract, and any further changes to be imposed or ratified by the third settlement agreement, are designed solely for the purpose of redressing Plaintiffs' claimed, but unproven, grievances and asserted constitutional violations in this case.[4]

Commonwealth Defendants' changes to the form private childcare agreement, and the additional changes to be made pursuant to the third settlement agreement, do not render this case moot. Instead, they indicate quite the opposite—this controversy is ongoing. The settlement agreement imposes onerous new terms on Sunrise because of its allegedly pervasively sectarian nature. But, the nature of Sunrise's religious beliefs is not the proper inquiry in an Establishment Clause case like this one. *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2386 (2020) (Departments of Health and Human Services, Labor, and Treasury have authority to exempt employers with religious objections from Affordable Care Act's contraceptive mandate); *Espinoza v. Mont. Dep't of Rev.*, 140 S. Ct. 2246, 2262 (2020) (state regulation prohibiting use of tax-credited scholarships at private religious schools held unconstitutional); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024-25 (2017) (state program denying grant for playground resurfacing to religious school, while providing grants to non-religious schools, held unconstitutional); *Zelman v. Simmons-Harris*, 536 U.S. 639, 662-63 (2002) (constitutional for school vouchers to be used for private, religious schools); *Mitchell v. Helms*, 530 U.S. 793, 851, 853 (2000) (O'Connor, J., concurring) (controlling concurrence rejecting "irrebuttable presumption" religious organizations will necessarily divert neutral aid for religious purposes). Rather, the proper question is whether the legislative funding of Kentucky's private childcare system violates the Establishment Clause.

---

[4] On the subject of mootness, the irony is this: Sunrise's successful summary judgment on the merits would render the need or incentive for any settlement, and all the collateral litigation and appeals surrounding it, moot.

The Sixth Circuit has already ruled that Sunrise is entitled to show that the new contract/settlement terms are improper because there is no constitutional infirmity in the existing system. In *Pedreira I*, the Sixth Circuit noted that Sunrise had fought for fifteen years to vindicate its constitutional rights. 802 F.3d at 872. This rings even more true now, after twenty-one years of litigation.

This case is not moot. At least two different exceptions to the mootness doctrine apply.

**First**, the collateral consequences doctrine applies. The collateral consequences doctrine provides that a case is not moot where aspects of the mooted conduct would adversely affect another party in the future. *See Allen v. Collins*, 2010 U.S. Dist. LEXIS 89575, at *15 (N.D. Ohio Aug. 4, 2010) (citing *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)).[5] As noted above, the collateral legal consequences to Sunrise are severe. If this Court grants voluntary dismissal, Sunrise will be forced to choose between signing a new private childcare agreement incorporating settlement terms that violate its sincerely held religious beliefs or not signing a new agreement and losing the majority of its funding—an existential threat.

**Second**, the voluntary cessation exception to the mootness doctrine applies. The voluntary cessation exception holds that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1013 (N.D. Ohio 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., (TOC), Inc.*, 528 U.S. 167, 189 (2000)). But for this exception, "courts would be compelled to leave the defendant free to return to his old ways." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189)). The party asserting mootness bears the "heavy burden of

---

[5] While the collateral consequences doctrine is generally applied in the criminal-law context, it is not exclusively applied in that context. *See Allen*, 2010 U.S. Dist. LEXIS 89575, at *15 (citing *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320 (2000)).

persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189.

The Commonwealth Defendants purport to have voluntarily ceased placing children with Sunrise due to Sunrise's refusal to sign a new private childcare agreement. But, voluntary conduct moots a case only in the rare instance where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Jones v. City of Lakeland*, 224 F.3d 518, 529 (6th Cir. 2000) (en banc) (quoting *Friends of the Earth*, 528 U.S. at 189).

Here, the alleged wrongful behavior sought to be remedied by Plaintiffs' Establishment Clause claim—Kentucky's purported funding of religious activities—could reasonably be expected to recur. The putative settlement agreement does not alter or prevent the flow of funding from the Commonwealth to any of the state's private childcare providers. Instead, it addresses Free Exercise concerns of children in the child welfare system. Neither Kentucky's lack of a current private childcare contract with Sunrise nor the terms of the putative settlement agreement prevent the alleged wrongful conduct from recurring. Plaintiffs have failed to meet their heavy burden of showing that the challenged conduct cannot reasonably be expected to recur. This case is far from moot, and Sunrise has standing to object to the Joint Motion.

## C.   Sixth Circuit precedent does not require the Court to automatically grant the Joint Motion.

Plaintiffs rely heavily on *Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964), a decades-old, three-page decision, in purported support of their claim the Joint Motion must be granted. In *Smoot*, the Sixth Circuit entered a writ of mandamus against a district judge who declined to grant a plaintiff's motion to dismiss his case with prejudice. But, the factual and procedural history of *Smoot* is easily distinguished from that presented here. For numerous reasons, *Smoot* is inapposite and does not mandate that the Joint Motion must be granted.

**1.** ***Unlike in* Smoot*, denial of the Joint Motion will not result in immediate trial of a claim that Plaintiffs wish to concede.***

*Smoot* differs from this case because the *Smoot* plaintiff sought voluntary dismissal with prejudice on the basis that he could not establish an essential element of his claim. 340 F.2d at 302-03. Thus, denial of the plaintiff's motion for voluntary dismissal would have forced the plaintiff to pointlessly pursue a claim both the plaintiff and his counsel agreed was futile. *Id.* at 303. Further, the case was postured to immediately proceed to a two- or three-week trial upon denial of the plaintiff's motion for voluntary dismissal. *Id.* at 303. These unique circumstances were pivotal to the Sixth Circuit's ruling in *Smoot*. *Id.* ("In the interest of justice and in order to prevent the conduct of an unnecessary trial, with its attendant accumulation of costs and inconvenience to witnesses, we grant the petition . . . .").

Here, denial of the Joint Motion would not force Plaintiffs to immediately go to trial on a claim they have admitted they cannot prove. Plaintiffs do not concede that they cannot prove their claim. This is evidenced by their vigorous (to put it mildly) opposition to Sunrise's pending summary-judgment motion. (DN 626). And, this case is not postured to immediately proceed to trial. Sunrise's long-pending, fully-briefed summary-judgment motion is ripe for the Court's consideration. If granted, Sunrise's summary-judgment motion would end this litigation entirely (except for a likely single appeal). Not only does *Smoot* not require the Court to permit voluntary dismissal under the circumstances present here, it does not require the Court to even consider potential voluntary dismissal before deciding Sunrise's pending summary-judgment motion. *See Estate of Butler*, 2008 U.S. Dist. LEXIS 135535, at *3-5 (rejecting argument that *Smoot* requires granting of voluntary dismissal before consideration of pending summary-judgment motion).[6]

---

[6] Plaintiffs note that this Court cited *Smoot* in a prior opinion in which it attempted to dismiss the case. *See Pedreira v. Sunrise Children's Servs.*, 2014 U.S. Dist. LEXIS 88558, at *10-12 (W.D. Ky. Jun. 30, 2014) (citing *Smoot*, 340 F.2d at 302). But, even though the Court cited *Smoot*, it did not apply *Smoot* as Plaintiffs urge—that the case

> **2.** **Smoot** ***did not involve a third party to the litigation and non-parties that would be prejudiced by the court allowing the plaintiff to voluntary dismiss his case.***

In *Smoot*, there were only two sets of parties in interest to the litigation such that a non-consenting third party could not be prejudiced by the voluntary dismissal. Thus, it made sense that the district court's denial of the plaintiff's motion to voluntarily dismiss would constitute an abuse of discretion where the sole defendant's interests were fully protected and vindicated and no other party's interests were involved—proceeding with the case would have been a pointless endeavor.

But, this is not the case here where the interest of another party (Sunrise) and non-parties (the other private childcare providers impacted by the proposed settlement agreement) are involved. Where, as here, a third party has been joined in the case, caselaw makes clear that the third-party's interests must also be considered when a plaintiff seeks to dismiss a case with prejudice. *See ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66, 70 & n.2 (1st Cir. 2006); *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1049 (10th Cir. 2002) (in evaluating Rule 41(a)(2) motion, "the important aspect is whether the opposing party will suffer prejudice in light of the valid interests of the parties"); *Wheeler v. Home Prods. Corp.*, 582 F.2d 891, 896 (5th Cir. 1977); *see also Moore's Federal Practice* § 41.40[3] (3d ed. 2005). To grant the Joint Motion here would result in substantial prejudice to Sunrise and the other non-party agencies that contract with Kentucky to care for Kentucky's neediest children.

Sunrise has litigated this case for twenty-one years, incurring millions of dollars in legal fees. Sunrise's effort and expense in litigating this case has not only been for its own benefit, but also for the benefit of all the other private agencies that contract with Kentucky. Further, Sunrise's

---

supposedly requires the automatic granting of a motion for voluntary dismissal without question. Rather, the Court conducted a thorough examination of Sunrise's arguments against dismissal despite there being a pending Rule 41 motion. *See id.* at *10-22. Further, the Court's opinion, in which it cited *Smoot*, was later overturned by the Sixth Circuit. *See Pedreira I*, 802 F.3d 865.

summary-judgment motion has been pending since November 2012 without receiving the Court's consideration. (DN 480). Plaintiffs have not explained why, after twenty-one years and millions of dollars have been invested in the case, it is necessary to dismiss this action without consideration of Sunrise's earlier-filed, fully-briefed summary-judgment motion. Moreover, there has been excessive delay and lack of diligence by Plaintiffs. This action, had Plaintiffs prosecuted it diligently, would not have required twenty-one years to reach its current state.

After twenty-one years, it is not sufficient or proper for Plaintiffs to voluntarily dismiss their claims pursuant to a settlement agreement that imposes onerous terms on Sunrise and Kentucky's other private childcare providers when Sunrise is on the cusp of receiving a merits determination finally vindicating its interests. Unlike in *Smoot*, a grant of voluntary dismissal here would be manifestly unjust to the interests of a third party and numerous non-parties.

### 3.   Unlike in Smoot, granting the Joint Motion here will not bar further action between the parties.

The *Smoot* Court also based its decision on its finding that the dismissal in that case constituted "a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." 340 F.2d at 303. Here, although Plaintiffs disingenuously style their request for voluntary dismissal as "with prejudice," it will not remotely operate as such. The putative settlement leaves undisturbed the Commonwealth's provision of public funds to Sunrise (an all other faith-based contractors in Kentucky). Because this basic financial circumstance remains unaltered, any one of the millions of Kentuckians who pay taxes to the Commonwealth would (arguably) have standing to bring the same claim against the Commonwealth and Sunrise that Plaintiffs have pursued for the last twenty-one years.

In addition to leaving the Commonwealth Defendants and Sunrise exposed to the same claim by other Kentucky taxpayers, the agreement also preserves the right of Plaintiffs themselves

to bring the same claim against the Commonwealth Defendants (and Sunrise): "the Parties agree that neither Plaintiffs nor Plaintiffs' Organizational Counsel release, discharge, or covenant not to assert claims against the Commonwealth Defendants based on any acts or omissions by the Commonwealth Defendants that occur after the Effective Date of this Agreement." (DN 633-1 § 8). Indeed, the only limitation on Plaintiffs' ability to bring the same claim is the requirement that they must first use the informal resolution procedures outlined in the agreement to address any "claims relat[ing] to the Commonwealth Defendants' agreements with any child-caring facilities or child-placing agencies based on acts or omissions that occur after the Effective Date of this Agreement," should such claims arise within seven years of the Effective Date.[7] *Id.* §§ 8, 10.

This procedure, however, leaves the Commonwealth Defendants (and Sunrise) exposed to the same suit by Plaintiffs—not to mention every other taxpayer in Kentucky—because Plaintiffs' Establishment Clause claim against the Commonwealth Defendants is not predicated on "the Commonwealth Defendants' *agreements* with any child-caring facilities or child-placing agencies," but rather on the legislature's practice of *providing taxpayer funds* to private agencies like Sunrise. For this reason, Plaintiffs (and other taxpayers) may bring the same claim against the Commonwealth Defendants, and Sunrise, immediately and without resorting to the agreement's informal resolution procedures, because the central fact giving rise to their taxpayer "injury" remains undisturbed by the terms of the agreement and has nothing to do with the private childcare agreements *per se*.

The dismissal in *Smoot* was the legal and practical equivalent of a merits judgment for the defendant; not so here. In this case, Plaintiffs are not waiving the white flag and conceding that either of the Defendants is the prevailing party. Rather, Plaintiffs expressly disclaim liability for

---

[7] Of course, Sunrise is not a part of this informal resolution process. It would be subject to immediate suit.

paying either Defendant any of the fees or costs to which they ordinarily would be entitled as a prevailing party. (DN 633 § 4). Further, unlike a case in which a merits judgment has been reached, neither Defendant will receive the benefit of a future taxpayer Establishment Clause claim being subject to claim or issue preclusion. *See Samsung Elecs. Co. v. Rambus, Inc.*, 440 F. Supp. 2d 495, 509 n.11 (E.D. Va. 2006) (citing *Semtek, Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2002)) (dismissal with prejudice under Rule 41 is not sufficient for claim preclusion).

*Smoot* provides that it would be an abuse of discretion for a court to deny a motion for voluntary dismissal where the plaintiff seeks to "throw in the towel" and accept defeat on the merits of his claim. But, such is not the case here. Plaintiffs are not forfeiting the game; they are attempting to cancel the game with the score tied at half-time, and then declare victory off the playing field.  Nothing in *Smoot* requires the Court to automatically grant a plaintiff's motion for voluntary dismissal where, as here, there has been no merits adjudication and voluntary dismissal would result in substantial prejudice to the interests of a third party and numerous non-parties.

**D.     The Court should not grant the Joint Motion because it is premised on an unenforceable settlement agreement that will not bring finality to this matter.**

The putative settlement agreement is unenforceable and will fail to resolve the dispute underlying this action. To begin with, the agreement runs directly afoul of prior holdings of the Sixth Circuit and this Court, which prohibit administrative bodies from independently modifying, expanding upon, or limiting statutes and regulations through an agreement. *See Pedreira II*, 826 F. App'x at 496 (agreement requiring Kentucky to enact and modify regulations not appropriate under Kentucky law); *Pedreira*, 2018 U.S. Dist. LEXIS 89577, at *35-36 ("Kentucky law establishes that actions by administrative bodies cannot independently modify, expand upon, or limit statutes or administrative regulations through an agreement . . . as its performance would be illegal.") (citations omitted).

The agreement is *ultra vires* in nature because it imposes significant changes in policy and procedure that squarely fall within the realm of formal administrative regulation, and plainly affect the rights and responsibilities of childcare facilities, child-placing facilities, volunteer foster parents, and the vulnerable children in these groups' care. Specifically, Section 6(b) of the agreement indicates that by no later than July 1, 2021, the Commonwealth Defendants shall implement the provisions of Sections 2(c), 2(d), 2(e), 2(f), and 2(g) of the agreement, regardless of whether or not the necessary administrative regulations have been enacted. (DN 633-1, Agmt. § 6(b)). Sunrise has previously exhaustively demonstrated that these sections of the agreement, which remain unchanged from the previous iterations of the agreement, unlawfully expand upon existing regulations and create new obligations that are not otherwise required under existing regulations. (DN 578, Sunrise Reply in Support of Mot. to Reconsider at 4-11) (discussing the unlawfulness of Sections 2(c), 2(d), 2(e), 2(f), and 2(g)).[8]

Other parts of the settlement agreement purport to require the Commonwealth to attempt in "good-faith" to adopt new regulations to implement policy changes. But, this sort of "agreement" is legally unenforceable.

**On the one hand**, as noted above, the Sixth Circuit and this Court have already held that any binding, contractual agreement by the Commonwealth Defendants to enact new regulations or modify existing regulations violates Kentucky law. *See Pedreira I*, 826 F. App'x at 496; *Pedreira.*, 2018 U.S. Dist. LEXIS 89577, at *35-36.

---

[8] Plaintiffs claim Sunrise has no basis to object to the settlement agreement because it can provide its objections during the notice-and-comment process when (and if) the Commonwealth Defendants attempt to enact new regulations. But, this ignores Sunrise's inability to object during the notice-and-comment period (assuming one ever occurs) to those changes the agreement purports to make outside of regulatory-review process. Further, this provides no reason why the Court should consider the Joint Motion before Sunrise's earlier-filed summary-judgment motion. The summary-judgment motion has the potential to end this action now on the merits, which would obviate the need for any administrative regulations to be enacted or modified.

The changes sought by Plaintiffs can only be accomplished through the formal regulatory process—not through a settlement agreement. This is because Kentucky's Administrative Procedure Act provides for rigorous scrutiny of proposed administrative regulations by the public and multiple legislative subcommittees. Prior to enactment, among other exacting standards, Plaintiffs' proposed regulations must be reviewed for adherence to mandatory drafting conventions (KRS 13A.222), impact on existing statutory and regulatory schemes (KRS 13A.240), and cost to state and local governments (KRS 13A.250).

Additionally, Plaintiffs' proposed regulations must be subjected to a period of public notice and comment. *See* KRS 13A.270. If the Commonwealth Defendants give legitimate consideration to all public comments, including those critical of their proposed regulations, as they are required to do by statute (KRS 13A.280), there is no guarantee they will still want (or be able) to move forward with enactment of the regulations. In fact, it is literally impossible for the Commonwealth Defendants to assert now that the proposed regulations are sure to be adopted. Such an assertion would render the regulatory review process a sham. Thus, it is impossible for the Commonwealth Defendants to lawfully agree to enact new regulations.

**On the other hand**, if the agreement does not create a binding commitment to enact or modify regulations, but instead reflects only a promise to make a good-faith effort to do so, then it is wholly speculative and illusory. By making release of their Establishment Clause claim absolutely contingent upon the Commonwealth Defendants' enactment of regulations, Plaintiffs have made an unenforceable, illusory promise. (DN 633-1, Agmt. § 6(a)). If the Commonwealth Defendants are unsuccessful in enacting regulations, then Plaintiffs can simply disregard the entire agreement, including their release of claims. Indeed, the settlement agreement repeatedly, expressly declares Plaintiffs' rights to "in their sole discretion, declare this entire Agreement null

and void." (*Id.* §§ 2(j)(3), 6(a), 6(c)). Because the putative settlement agreement is unenforceable and will not bring finality to this dispute, the Joint Motion should be denied.

Further, the terms of the settlement agreement provide another reason why the Court should rule on Sunrise's earlier-filed summary-judgment motion before ruling on the Joint Motion: the putative settlement agreement establishes there is nothing unlawful about Kentucky's current funding of the private childcare system. The Sixth Circuit previously held that the only viable complaint against Kentucky as to which Plaintiffs have standing is that Kentucky purportedly unlawfully funds religious organizations. *See Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 732 (6th Cir. 2009) ("[T]he plaintiffs have sufficiently demonstrated a link between the challenged legislative actions and the alleged constitutional violations, namely that Kentucky's statutory funding for neglected children in private childcare facilities knowingly and impermissibly funds a religious organization.").

But, the putative settlement agreement does not address at all Kentucky's funding of the private childcare system. The settlement agreement does not purport to alter the flow of one dollar of state funding away from any private childcare provider. Because there is no constitutional infirmity in Kentucky's funding system, there is no predicate for dismissal under the terms of the putative settlement agreement. Instead of granting the Joint Motion, Sunrise's summary-judgment motion should be granted and the case dismissed on the merits.

**E.     The agreement is unlawful because it purports to bind one or more subsequent executive administrations to its terms.**

The agreement seeks to effect sweeping changes to Kentucky's private childcare system without a hint, let alone an admission, by Kentucky that it (or Sunrise or any other private childcare provider) violated any law. Due to pressure from Plaintiffs and out-of-state advocacy groups, the

15

Commonwealth Defendants accede to changes that would otherwise not be available to them within the democratic process.

Relevant here, the Supreme Court has cautioned:

> [T]he power of governing is a trust committed by the people to the government, no part of which can be granted away. The people, in their sovereign capacity, have established their agencies for the preservation of public health and the public morals, and the protection of public and private rights. These several agencies can govern according to their discretion, if within the scope of their general authority, while in power; but they cannot give away nor sell the distraction of those that are to come after them, in respect to matters the government of which, from the very nature of things, must vary with varying circumstances.

*Stone v. Mississippi*, 101 U.S. 814, 820 (1879).

The Court is permitted to and should proceed circumspectly when evaluating a proposed agreement that seeks to entrench the current gubernatorial administration's political agenda for at least seven years (even after the executive branch changes due to election results). (DN 633-1, Agmt. § 9) (monitoring provisions of agreement to remain in place at least seven years); *see*, *e.g.*, *In re Gillis*, 836 F.2d 1001, 1005-09 (6th Cir. 1988) (granting writ requiring district court to dismiss taxpayer case against Kentucky Cabinet Secretary on grounds of comity to state prerogatives). The Joint Motion should be denied because it is based on an unlawful agreement that will fail to bring finality to this dispute.

## CONCLUSION

Plaintiffs' claim that this case is mooted by a third attempted settlement agreement is *déjà vu* all over again. Their first two attempts only led to more litigation, more appeals, more expense, and more waste of judicial resources. They resolved nothing. There is no reason to expect a different result this time.

It is past time for Sunrise's summary-judgment motion to be heard. That motion, and not the Joint Motion, has the true potential to end this litigation and preclude similar claims for good. For the reasons stated above, the Joint Motion should be denied.

Respectfully submitted,

*/s/ John O. Sheller*
John O. Sheller
Jeffrey A. Calabrese
Steven T. Clark
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, KY 40202
Phone: (502) 333-6000
john.sheller@skofirm.com
jeff.calabrese@skofirm.com
steven.clark@skofirm.com

*Counsel for Defendant,*
*Sunrise Children's Services, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April 2021, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will send email notification to all parties of record.

*/s/ John O. Sheller*
*Counsel for Defendant,*
*Sunrise Children's Services, Inc.*

109439.127115/8512250.4

17